WILLIAM B. NEWELL, Respondent, *v.* ST. LOUIS BOLT AND IRON COMPANY, Appellant.

### February 5, 1878.

1. One office of instructions is to define the issues, and to exclude from the jury questions foreign to the case. The giving of an instruction is a declaration by the court that it is relevant to the issues; and where it presents contingencies not in the case, it is erroneous.

2. Where the defendant, by the pleadings, admits the receipt of money, but denies that it was received as a loan, the point in issue on the trial being whether the money received was a loan, it is error to instruct the jury that the burden is on the defendant to show that the money received was not a loan.

3. Where plaintiff alleges that he was hired by defendant as book-keeper for a specified time, and defendant's testimony tends to show that the services alleged to have been rendered as employee were the acts of a partner in his own business, it is error to refuse an instruction which requires the jury to find upon what agreement and in what capacity the services were rendered. While the pleadings and proofs present the two theories of services rendered as employee and acts performed as partner, there can arise no implication of a promise to pay for such services or acts.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

GEORGE A. MADILL, with T. E. RALSTON, for appellant.

SLAYBACK & HAUESSLER, for respondent: Instructions; what they must contain, and when they will be declared erroneous. — *Woodruff* v. *Hough*, 1 Otto, 596; *Haskings* v. *Railroad Co.*, 58 Mo. 302; *Henschen* v. *O'Bannon*, 56 Mo. 291; *Caldwell* v. *Stephens et al.*, 57 Mo. 589; *Vaulx* v. *Campbell*, 8 Mo. 224; *Neale* v. *McKinstry*, 7 Mo. 128; *Blackwell* v. *Baily*, 1 Mo. App. 328;

*Rickey* v. *Zeppenfeldt*, 64 Mo. 277; *Miller* v. *Drake*, 62 Mo. 544; *Clements* v. *Moloney*, 55 Mo. 353; *Williams* v. *Vanmeter*, 8 Mo. 339; *Rogers* v. *McCune*, 19 Mo. 557; *Loehner* v. *Insurance Co.*, 19 Mo. 628; *The State* v. *Taylor*, 64 Mo. 358; *Moore* v. *Sanborin*, 42 Mo. 499; *Sears* v. *Wall*, 49 Mo. 359; *Russell* v. *Insurance Co.*, 55 Mo. 585; *Pond* v. *Wyman*, 15 Mo. 175; *Gamache* v. *Picquignot*, 17 Mo. 310; *Phillips* v. *Smoot*, 15 Mo. 598; *The State* v. *Floyd*, 15 Mo. 349; *Bay* v. *Sullivan*, 30 Mo. 191; *Chouquette* v. *Barada*, 28 Mo. 491; *Morris* v. *Morris*, 28 Mo. 115; *Rose* v. *Spies*, 44 Mo. 20; *Tate* v. *Railway Co.*, 64 Mo. 149; *Bowling* v. *Hax*, 55 Mo. 446; *Walter* v. *Cathcart*, 18 Mo. 256; *The State* v. *Brown*, 64 Mo. 367; *Finney* v. *Allen*, 7 Mo. 419; *Swearingen* v. *Orme*, 8 Mo. 707; *Patterson* v. *McClanahan*, 13 Mo. 507; *Carroll* v. *Paul*, 19 Mo. 102; *Miles* v. *Davis*, 19 Mo. 408; *Buckner* v. *Jones*, 1 Mo. App. 538; *German National Bank* v. *Studley*, 1 Mo. App. 260. Appellate courts will not weigh evidence. — *Capelle* v. *Brainard*, 52 Mo. 479; *Beattie* v. *Hill*, 60 Mo. 72; *Edwards* v. *Cary*, 60 Mo. 572; *The State to use* v. *Bressler*, 56 Mo. 350; *Thompson* v. *Russell*, 30 Mo. 498; *Carver* v. *Thornhill*, 53 Mo. 283; *Hay* v. *Short*, 49 Mo. 139. That the verdict is against the weight of evidence is no ground for a reversal. Questions of conflicting evidence are solely for the jury, in civil actions at law. — *Tutt* v. *Cloney*, 62 Mo. 116; *Perkins* v. *Railway Co.*, 55 Mo. 202; *Estell* v. *Railroad Co.*, 56 Mo. 282; *Douglas* v. *Orr*, 58 Mo. 573; *Fulkerson* v. *Bollinger*, 9 Mo. 838; *Schuster* v. *Railroad Co.*, 60 Mo. 290; *McHugh* v. *Meyer*, 61 Mo. 334; *Reynolds* v. *Rogers*, 63 Mo. 17; *Hill* v. *Deaver*, 7 Mo. 57; *Rider* v. *Springmeyer*, 30 Mo. 234; *Lockwood* v. *Insurance Co.*, 47 Mo. 50; *Price* v. *Evans*, 49 Mo. 396; *Week* v. *Senden*, 54 Mo. 129; *Powell* v. *Camp*, 60 Mo. 569; *Kitchen* v. *Railroad Co.*, 59 Mo. 514; *Moore* v. *Davis*, 51 Mo. 233; *Schultz* v. *Insurance Co.*, 57 Mo. 331; *Tiffin* v. *Forrester*, 8 Mo. 642;

*Oldham* v. *Henderson*, 4 Mo. 295 ; *Ried* v. *Insurance Co.*,
58 Mo. 429 ; *Allen* v. *Jones*, 50 Mo. 205 ; *McKay* v. *Underwood*, 47 Mo. 185 ; *Irvin* v. *Riddlesburger*, 29 Mo.
341 ; *McLean, Admr.*, v. *Bragg*, 30 Mo. 262 ; *McCune* v.
*Erfort*, 43 Mo. 134 ; *Faugman* v. *Hersey*, 43 Mo. 122 ;
*Easley* v. *Elliott*, 43 Mo. 289 ; *Jaccard* v. *Davis*, 43 Mo.
535 ; *Allen's Administrator* v. *Richmond*, 41 Mo. 302 ;
*Blumenthal* v. *Torlina*, 40 Mo. 159 ; *Longuemare* v. *Busby*,
56 Mo. 540 ; *Lottman* v. *Barnett*, *Morse* v. *Sherrill*, 63
Barb. 21.

HAYDEN, J., delivered the opinion of the court.

The petition in this case contains two counts : The first is
to recover $10,005, which, it is averred, was lent to the corporation, by the plaintiff, on June 20, 1874, the loan, on
which a payment of $500 for interest is credited, bearing
interest, it is alleged, at ten per cent per annum. The second count is to recover for services rendered, as stated, by
plaintiff to defendant, as book-keeper, from July 1, 1874, to
April 1, 1875, at $200 a month. The answer, after a general denial, contained matter to the following effect : That
in June, 1874, plaintiff agreed to take twenty shares in the
capital stock of defendant, and to pay for it $19,000 ; that
$10,005 were paid upon the shares, and eleven shares
issued to plaintiff ; that, by the agreement, the whole of the
stock of the company was to be owned by five stockholders,
four of whom had taken twenty shares at $20,000 in cash,
and the plaintiff agreed to make his shares the same, and
pay the balance of $19,000 on or before Oct. 1, 1874 ; that
each of these stockholders was to be a director, and to devote
his entire time to the company's business ; that in pursuance of this understanding, at about the time the stock was
issued to him, plaintiff was elected a director of the company ; that he was to draw such sums as might be necessary
for his support, which were to be considered as advances on
profits, and that thus, and not as interest, the $500 was

drawn; that in this way, and not otherwise, he had charge of the books, and performed services, etc. The reply denied the new matter, and pleaded certain facts of evidence.

On the trial, the theory of the plaintiff appeared to be that he had been requested to buy stock in the defendant company; that suggestion was made that he should investigate its affairs, with a view to his so buying; that, accordingly, he entered the service of defendant as its book-keeper, intending, if satisfied, to purchase shares; that the company borrowed of him $10,005; that after so performing services, he was not satisfied with the company's condition or prospects, and so informed the officers; and that he then demanded that the amount loaned should be returned to him. The plaintiff gave evidence tending to show that $200 a month was agreed upon as the salary for his services as book-keeper; that a loan was requested of him by the company, and that he gave to it his check on New York for $10,000, and that of this an entry was made, in his favor, in the cash-book; that nothing was then said to him about taking shares, and that he took no stock in the company at any time; that he never was a director in the corporation; that, if elected such, it was against his consent; that he did not think he was present when so elected, but was not sure; that his recollection was that he had never represented to citizens of St. Louis that he had taken an interest in the defendant company.

The defendant introduced many witnesses, whose voluminous testimony need be given only in brief outline. Its tendency was to show that, as the result of an understanding between the plaintiff and the defendant, the plaintiff put into the company $10,005 in part payment for stock to the amount of $20,000 in the company, which stock the plaintiff was to purchase at ninety-five cents on the dollar; that he was to keep the books, and have charge of the finances of the company, and did so; that for the $10,005 paid by the plaintiff, eleven shares of stock were made out

in plaintiff's name and delivered to him; that he was elected cashier, an office created for him, and elected a director of the company, and that he acted and voted as such; that he was repeatedly introduced to strangers as a partner in the company's business, and wrote of himself as such, and spoke of himself as a stockholder in the company; that there was never any agreement to pay him for services, but that, like the other stockholders, he was at liberty to draw $200 a month on personal account; that afterwards, and when he thought the investment a bad one, he claimed that the money he had paid on the stock was a loan, and brought this suit.

On rebuttal, two letters written by the plaintiff being shown to him, and his attention being called to statements in them in which he had alluded to himself as a partner in the defendant company, and the letter-heads in which his name as a proprietor was displayed being put to him, he testified to the effect that his own statements as to the partnership were false; that he was uncertain whether he got these letter-heads printed or not, but did not write out the form for them; that he did not put his name there as proprietor, but allowed it to be so used, and wrote letters upon the blanks himself, knowing he was no partner; that as to the intention with which his name was put there he did not know, but just saw it there and let it go.

The instructions, so far as necessary, are noticed below. The jury found for the plaintiff on both counts. The court below refused to set aside the verdict, and the defendant appealed. At the request of the plaintiff, the following instructions were given: —

" 1. If the jury believe from the evidence that the money advanced by plaintiff to defendant, on or about June 20, 1874, was a loan to them for their use, and that the same remains due, they will find for plaintiff in the amount so loaned, with interest from the time they may believe the interest has been paid, on first count.

" The court declares the law to be that no oral agreement on behalf of the plaintiff to take stock in defendant is binding upon him, unless he either agreed in writing so to do, or subscribed for stock, or purchased stock from a former owner of stock, or accepted certificates of stock, or paid to defendant the whole or some portion of the price at which he may have agreed to take such stock.

" 2. Notwithstanding the jury may believe from the evidence that, on June 20, 1874, plaintiff contemplated becoming a stockholder in defendant, the burden of proof is upon the defendant to show that the money advanced by him was a payment of so much on account of shares of its stock which he (plaintiff) had agreed to take, and unless they so believe from the evidence, they will find for plaintiff on first count of petition. The jury will state in their verdict how they find on each count in the petition, separately. If the jury believe from the evidence that plaintiff, at request of defendant, entered its employment as book-keeper and cashier, and faithfully performed the services as such, without any understanding as to what his compensation should be, then they should, on second count of petition, find for plaintiff in such sum as they may from the evidence believe such services were reasonably worth, with interest at six per cent per annum from commencement of suit."

It is apparent that neither of the above instructions should have been given. The second paragraph of the first instruction contains, as it stands, a contradiction in terms. If we are to assume that the absurdity of expression did no harm, and that the jury understood what is meant by the instruction, still it is erroneous. There is no evidence on which to base the hypothesis that the plaintiff agreed in writing to take shares of stock in the defendant company ; nor did the defendant put forth any pretence, so far as appears from any evidence in the case, that the plaintiff agreed in writing to take any stock. The defendant's evidence is to the effect that the shares or certificates of stock were filled up in the

plaintiff's name, and handed to him, or put upon the desk where he was, and that this was done in pursuance of the previous understanding, which rested wholly in parol. It is urged by the respondent, here, that this error could not have injured the appellant. But, first, we are to suppose that the contradictory language of the instruction did no injury; and then, on the top of this, we are to suppose the error in giving an instruction which is unsupported by evidence worked no harm. These suppositions would be purely gratuitous, and the rights of parties cannot be so trifled with. In any case, certainly in a case of this magnitude, each litigant has a right to a fair trial, with instructions that express the law applicable to the issues. It is easy to see how the rights of the appellant may have been prejudiced in this case, before the jury, by the prominence given by this instruction to three contingencies, no one of which had any thing to do with this case: first, the agreement in writing to take stock; second, a subscription for stock; third, a purchase of stock from a former owner. Wherever instructions are given which present contingencies not in the case, these will be resorted to in argument, as a matter of course, by the counsel asking such instructions; since, at the same time that they afford a negative support to his conclusions, the fact that they are given is a declaration by the court that they are relevant to the issues in the case. Moreover, as one office of instructions is to define the issues, and to exclude from the jury questions which are foreign to the case, all such instructions are faulty as erroneous definitions of the issues. The jury should not be confused, or the rights of either party imperilled, by presenting merely imaginable contingencies. The fourth instruction given for defendant properly declared the law as to plaintiff's becoming a stockholder.

But the error of the second instruction is still more serious. Whatever may have been intended, this instruction tells the jury, without reference to any hypothesis or to the

production of any evidence, that the plaintiff has a *prima facie* case against the defendant, — in other words, that the jury are to take it for granted that the $10,005 was a loan; nay, more, it tells the jury that if the defendant does not rebut the burden thus cast upon it, "they will find for plaintiff on first count of petition." As not only upon the paper issues, or pleadings, the defendant denied that the money was lent, but as upon the trial this was the very point in contest, the burden was, of course, upon the plaintiff to prove that the money was lent. The fact that the defendant admitted that it had received $10,005 created no presumption of a loan. This was the question in issue, and it was the plaintiff, not the defendant, who brought the suit and was asking for judgment. Suppose that the defendant, insisting, as every defendant who pleads properly has a right to do, that upon the plaintiff was the burden to make out his case, had asked an instruction to that effect, stating the facts necessary to be proved by the plaintiff under the first count, such an instruction would have been not only inconsistent with, but wholly antagonistic to, the second instruction above given. It is to be presumed that the jury heeded the instructions given; but if they did, they might, upon the second instruction, have found a verdict upon the first count for the plaintiff, even if they disbelieved his testimony.

The defendant was entitled to the following instruction, which he asked, and which the court below refused. Other instructions were given, but none covered the points presented by this. The last paragraph of the plaintiff's second instruction did not correctly state the law, for reasons which are given in connection with the following instruction: —

"3. The court instructs the jury that, to entitle plaintiff to recover for his services as a book-keeper for defendant, they must believe from the evidence that he was employed by defendant as book-keeper on a distinct agreement or understanding that he should be paid for his services as such

book-keeper, either a specific sum, or such sum as his services were reasonably worth. And if the jury believe from the evidence that he took charge of the books to ascertain the condition of defendant, with a view to becoming a stockholder or taking a pecuniary interest in defendant, and afterwards continued to keep said books and act as cashier of defendant, as a stockholder or as one of the parties interested in the business of defendant, then plaintiff is not entitled to recover upon the second count of his petition.''

The evidence shows that the plaintiff was, and remained for a time, engaged in keeping the books of the defendant and doing certain other acts in connection with its business; and an essential question was, in what capacity and upon what agreement or understanding was the plaintiff so acting? The case presented is not one where one party does services for another, and the second party avails himself of the benefit of the services done for him and then denies his liability, and where the law, supplying the formal words of the contract, presumes a promise to pay a reasonable compensation. The evidence carries the case beyond that stage, and presents closer issues. Not only does the plaintiff allege an actual hiring for a specified time and duties, but the defendant's evidence tends to show that these services, thus alleged to have been rendered as employee, were acts of a stockholder or partner attending to his own business. Thus, the question is not as to any general implication of law, but between two defined and clashing theories. These two theories, in view of the pleadings and evidence, are well presented and sharply contrasted in the instruction just quoted.

The judgment of the court below is reversed and the case remanded. All the judges concur.