EWING, *Mayor*, **v.** HOBLITZELLE, *Recorder, Appellant.*

1. **Constitution:** STATUTES. An act of the legislature must appear to be unconstitutional beyond a reasonable doubt before the judiciary will pronounce it invalid for that reason.

2. **Statute:** SINGLE SUBJECT; TITLE: CONSTITUTION. When all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or the means of accomplishing it, then the subject is single within the meaning of the constitution, that no bill except the general appropriation bill, shall contain more than one subject, and if the latter is sufficiently expressed in the title, the statute is valid.

3. ——: ——: ——: ——. The act of the legislature of March 31, 1883 (Laws, p. 38), which provides, and so expresses in its title, "for the registration of all voters in cities having a population of more than one hundred thousand inhabitants, and to govern elections in such cities and to create the office of recorder of voters," is not obnoxious to the inhibition of the constitution, that no bill shall contain more than one subject which shall be clearly expressed in the title.

4. **Constitution:** SPECIAL LAW. Such act is not unconstitutional as being a special law, because, first, section 5, article 8, of the constitution, not only confers on the legislature the power to pass such a law, but expressly commands the exercise of the power, and, second, because the act is not restricted or limited in its operation only to cities having a population of over one hundred thousand at the time it was passed.

5. ——: ——. A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class, is a special one.

6. **Charter of St. Louis:** CONSTITUTION. Said act of March 31, 1883, is not invalid as being in conflict with the provisions of the constitution authorizing the voters of the city of St. Louis to frame and adopt a charter for its government, such charter and amendments thereto being by express provision of the constitution subordinate to the constitution and laws of the state.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Glover & Shepley* and *G. H. Shields* for appellants.

(1) Every question of doubt should be resolved in favor of the validity of the statute ( 51 Mo. 82 ), because the power of the legislature is absolute, except when restrained by the federal or state constitution. 34 Barb. 138; Cooley's Const. Lim. 173. (2) The state legislature has power over all subjects on which its legislation is not prohibited. 15 N. Y. 303; 27 Barb. 593; 4 Mich. 244; 5 Mich. 257; 24 N. Y. 497, 504; 2 Park, Cr. R. 490; 15 La. Ann. 190; 18 Ind. 258; 17 Cal. 547; 17 Pa. St. 119; 19 Pa. St. 260; 52 Pa. St. 477; Cooley's Const. Lim., 1868, 173, 174. (3) Should the legislature attempt to grant a municipal corporation powers irrevocable by itself, they would be, notwithstanding, under the control of the legislative power. 10 How. 511; 3 Bland (Md. Ch.) 407; 13 Wend. 331; 9 Mo. 507; 29 Vt. 12; 13 Ill. 30; 2 Allen 27; 1 La. Ann. 162; 5 La. Ann. 665. No sovereign state ever sat up an independent prinicipality, an *imperium in imperio*, such as Mr. Bell contends St. Louis to be, within its borders. (4) We must look to the constitution and that alone, to find provisions which emancipate St. Louis and its charter from the control of the legislature. *Brown v. Fifield*, 4 Mich. 322. The state did not, in the constitution, resign its functions over the territory of the city of St. Louis. Const., art. 9, secs. 20 and 23; art. 4, sec. 53; art. 9, secs. 7 and 22; *Town of Marietta v. Fearing*, 4 Ohio 427. (5) The registration of voters, the conduct of elections, including the appointment of judges of elections, and the canvass and returns thereof, are not incongruous subjects, but are germane to each other, are properly included in one act, and are clearly expressed in the title of the act in question. *State v. Ranson*, 73 Mo. 78; see, also, *Frost v. Wilson*, 70 Mo. 664; *State v. Matthews*, 44 Mo. 523; *State v. Bank of*

*the State of Mo.*, 45 Mo. 528 ; *City of St. Louis v. Tiffel*, 42 Mo. 578 ; *State v. Shepherd*, 74 Mo. 310 ; *State v. Chambers*, 70 Mo. 625. The act of the general assembly involved in this suit is not a special or local law. *State v. Toole*, 71 Mo. 665 ; *State ex rel. Monohan v. Walton*, 69 Mo. 556 ; *State ex rel. Berry v. Shields*, 4 Mo. App. 259.

*Leverett Bell* for respondent.

(1) Injunction is the proper remedy in this case. *Bradley v. Commissioners*, 2 Humph. 428 ; *Kerr v. Trego*, 47 Pa. St. 292. (2) The act of March 31, 1883, (Laws of 1883, p. 38), contravenes section 28, article 4, of the constitution, which provides that no bill, except a general appropriation bill, shall contain more than one subject, which shall be clearly expressed in its title. It embraces two distinct subjects. It provides for the registration of voters, by sections one to seventeen inclusive ; and the remaining sections of the act relate to the manner of conducting elections in St. Louis. The subjects are separate and independent. *State v. Persinger*, 76 Mo. 346 ; Cooley's Const. Lim. (5 Ed.) 178 ; *People v. Parks*, 58 Cal. 624 ; *Huber v. People*, 49 N. Y. 132 ; *Murphy v. State*, 73 Tenn. 373 ; *State v. Barrett*, 27 Kan. 213 ; *San Antonio v. Gould*, 34 Texas 49 ; *Stewart v. Father Matthew Society*, 41 Mich. 67 ; *In re Paul*, 94 N. Y. 497. (3) It is repugnant to section fifty-three, of article four of the constitution, which provides that the general assembly shall not pass any local or special law regulating the affairs of cities, changing the charters of cities, providing the manner of conducting elections, or fixing or changing the places of voting, creating offices or prescribing the powers and duties of officers in cities. *State, etc., v. Hermann*, 75 Mo. 340 ; *Devine v. Cook County*, 84 Ill. 590. It cannot, so far as it attempts to authorize the recorder of voters to appoint the judges and clerks of election, be supported under section five, of article eight,

of the state constitution, because the above feature is independent of and is not lawfully incorporated in an act to provide for the registration of voters. The registration of voters is one thing, and the method of conducting an election and canvassing the returns is another, and distinct and separate subject matter. (4) It violates sections 20, 21, 22, 23, 24, and 25, of article 9, of the state constitution, which confer on the people of St. Louis the right of self-government in matters of local concern, and it is in effect an amendment to the charter of St. Louis, not authorized by said sections of the constitution. The present charter of St. Louis was adopted by the vote of the people of the city on August 22, 1876, and it went into effect at the end of sixty days thereafter. It has been before the court in a number of cases, and its provisions have always been upheld. *State v. Powers*, 68 Mo. 320; *St. Louis v. Sternberg*, 69 Mo. 289; *State v. Walsh*, 69 Mo. 409; *St. Louis v. Green*, 70 Mo. 563; *State v. Mayor*, 73 Mo. 435; *St. Louis v. Knox*, 74 Mo. 79; *Ex parte Hollwedell*, 75 Mo. 395; *St. Louis v. Richeson*, 76 Mo. 470; *St. Louis v. Bircher*, 76 Mo. 431; *Eyerman v. Blakesley*, 78 Mo. 145; *Farrar v. St. Louis*, 80 Mo. 379; *State, etc., v. Smith*, 81 Mo. 51. (4) The purpose of section 25, article 9, of the constitution which reserves to the state general assembly "the same power over the city and county of St. Louis that it has over other cities and counties of the state," was to reserve to the state the right to legislate as to matters in St. Louis of state concern. The question, who shall appoint judges and clerks of election at a special election in the city of St. Louis, held pursuant to its charter and ordinances for the purpose of filling a local city office, is one in which the state has no interest, and as to which it is forbidden to legislate, and the charter having vested the power of appointment in the mayor, the state legislature has no power to transfer it to the recorder of voters. (5) Under the system of government prevailing in Missouri, the powers and duties designated in the act of 1883, to be exercised

by the recorder, are required to be distributed, and cannot lawfully be exercised by the same person. (6) Under the law of the land, the legislature has no power to order and direct the disbursement of money raised by taxation in the city of St. Louis for local municipal purposes, in the manner and for the objects set forth in the said act of March 31, 1883. Cooley on Const. Lim. (5 Ed.) 285. The question of the salary and compensation to be paid out of the city treasury to the recorder of voters, and the deputies and clerks employed in his office, is one of exclusively local concern which the state has no right to interfere with and control by compulsory legislation. *People v. Common Council*, 28 Mich. 228; *People v. Mayor*, 51 Ill. 17. The city of St. Louis by its charter is authorized to establish and fix the salaries and compensation of all officers, deputies and clerks employed by the city in any of its offices or departments. Part 8, sec. 26, art. 3, 2 R. S. 1587; Sec. 17, art. 16, 2 R. S. 1629. The act of March 31, 1883 (Laws of 1883, 38), contravenes section 28, of article 4, of the state constitution, which provides that no bill, except a general appropriation bill, shall contain more than one subject, which shall be clearly expressed in its title. The act embraces two distinct, separate and independent subjects. It provides for the registration of voters, by sections one to seventeen inclusive and by section twenty-five; and sections 18, 19, 20, 21, 22, 23, 24, 26, and 27, of the act relate to the manner of conducting elections in St. Louis. The subjects are distinct, separate and independent. *State v. Persinger*, 76 Mo. 346; Cooley's Const. Lim. (5 Ed.) 178; *People v. Parks*, 58 Cal. 624; *Huber v. People*, 49 N. Y. 132; *Murphy v. State*, 73 Tenn. (9Lea) 373; *State v. Barret*, 27 Kan. 213; *San Antonio v. Gould*, 34 Tex. 49; *Stewart v. Father Matthew Society*, 41 Mich. 67; *In re Paul*, 94 N. Y. 497.

NORTON, J.—This is a proceeding by injunction, instituted in the circuit court of the city of St. Louis, to enjoin and restrain defendant from appointing four

judges and two clerks to serve at each election precinct in the city of St. Louis, at a certain election to be held in said city. A demurrer was interposed to the petition by defendant, which was sustained by the circuit court and the bill dismissed. On appeal to the St. Louis court of appeals said judgment was reversed, and the right of plaintiff to the relief prayed for asserted, from which judgment defendant has appealed to this court.

It is substantially averred in plaintiff's petition that he was the mayor of the city of St. Louis, and that by virtue of section 15, article 2, of the charter of said city the duty is imposed upon him of appointing, at least ten days before every election held in said city, four competent persons to act as judges, and two persons to act as clerks at each election precinct in said city. It is further averred that an election was soon thereafter to take place in said city for the office of president of the board of assessors and that plaintiff was engaged in selecting and appointing the judges and clerks of said election. It is then averred that defendant, who is recorder of voters in said city, under an appointment from the governor of the state, threatened to appoint judges and clerks for said election, whereby great confusion and injury to the public would result. It is then averred that the act of the general assembly, approved March 31, 1883, under which defendant claims the right to exercise such power of appointment, is unconstitutional and void.

It will be seen from this statement that the question decisive of the case presented by the record, is this: Is the said act of 1883 constitutional? An affirmative answer to this interrogatory reverses, and a negative answer affirms the judgment of the court of appeals. As preliminary to the consideration of the question involved, and as indicating the rule for our guidance in determining it, it may be observed that, when we are called upon to declare an act of the legislature unconstitutional, which has been passed with all the forms and ceremonie

requisite to give it force, the question should be approached with great caution and should be considered with the utmost care and deliberation. The nullity and invalidity of such a law must appear beyond a reasonable doubt before we can assume to pronounce it void. This rule is founded on the fact that the judiciary ought to accord to the legislature as much purity of purpose as it claims for itself; as honest a desire to obey the constitution, and, also, a high capacity to judge of its meaning. *State v. Able*, 65 Mo. 357; 43 Mo. 385; 48 Mo. 468; *State v. Ranson*, 73 Mo. 78. So much of the title to the act of 1883 here called in question as bears on the point raised is as follows: "An act to provide for the registration of all voters in cities having a population of more than one hundred thousand inhabitants, and to govern elections in such cities, and to create the office of recorder of voters." The first seventeen sections of the act relate to registration of voters and the appointment of recorder of voters; and the ten succeeding sections relate to the manner of conducting elections in such cities. It is contended by counsel that the registration of voters is one subject, and the governing of elections is another and distinct subject, each independent of and disconnected from the other, and that the said act is, therefore, violative of section 28, article 4, of the constitution, which declares that "no bill except general appropriation bills shall contain more than one subject, which shall be clearly expressed in the title." While it has been held in some of the states whose constitutions contain provisions like said section 28, article 4, that they are directory merely, the great weight of authority is to the effect that they are mandatory and must be complied with to make a valid law. But in the states where this has been held it is also held that an act containing provisions relating to matters which are germane to the general subject is not obnoxious to such constitutional inhibition, the object of such inhibition being to prevent the practice of joining in the same bills incongruous sub-

jects having no relation or connection with each other, and not germane to the subject embraced in the title. In the case of the *State v. Miller*, 45 Mo. 497, it is said, in speaking of this subject, that "the courts in all the states where a like or similar provision exists have given it a very liberal interpretation, and have endeavored so to construe it as not to limit or cripple legislative enactments any further than was necessary by the absolute requirements of the law." And in Mr. Cooley's work on Constitutional Limitations, in treating of such a provision, it is said that "there has been a general disposition to construe the constitutional provision liberally, rather than embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it was adopted." Whether a provision of a statute is or not germane to the general subject, is determinable by a rule laid down by Mr. Sedgwick, in his work on Statutory and Constitutional Law, page 521, in note, which is as follows: "Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title the statute is valid."

As illustrative of the principle, reference may be made to the case of *Davis v. Woolnough*, 9 Iowa 104, where it was held that an act for revising and consolidating the laws incorporating the city of Dubuque and to establish a city court therein, was held to be valid, because establishing a city court was not a new subject, but a mere incident to the general subject stated in the title. So in the case of *Thomasson v. State*, 15 Ind. 449, an act for regulating the sale of liquor, may prohibit the giving of liquor to minors. No doubt can exist as to the constitutionality of the said act of 1883, in so far as it relates to the registration of voters in cities having a population in excess of 100,000, for by section 5, article 8, of the constitution, it is expressly declared

that "the general assembly shall provide by law for the registration of voters in cities and counties having a population of more than 100,000 inhabitants, and may provide for such registration in cities having a population exceeding 25,000 inhabitants, but not otherwise." This section of the constitution, in so far as it relates to cities containing more than 100,000 inhabitants, is imperative and mandatory, and the legislature could not refuse to obey the mandate without disregarding a plain duty. It is to be observed that the artic'e of the constitution in which the above section is found is headed "Suffrage and Elections," thus showing that the subject of voting was united or connected with elections at which the right to vote was to be exercised. But it is argued that, while so much of the act as relates to the registration of voters may find support in the constitutional provision above quoted, that all that part of the act which relates to governing elections must fall, for the reason that governing elections in such cities is an independent subject, and has no relation to the subject of registration of voters. The question whether this is so or not may be tested by the rule heretofore adverted to, viz. : "When all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or the means of accomplishing it, then the subject is single, and if sufficiently expressed in the title the statute is valid."

The object of the constitutional requirement that voters in cities of more than 100,000 inhabitants should be registered, was not simply to ascertain the number of voters in such cities, but for the sole purpose of ascertaining what persons were qualified to vote at elections to be held therein. It was intended that the registration of voters in such cities should be the first and initial step taken in order to have an election, and, in this view of it, elections in such cities may be said to "fairly relate to the registration of voters, and have not only a material, but necessary connection with it." For illustration :

Suppose that under the act in question, which, as we have seen, is valid in all respects in so far as it relates to the registration of voters, and by which the right of persons to vote at elections held in such cities is ascertained, no registration of voters whatever should be made as is therein provided, the question would at once arise whether a valid election could be held for want of such registration. The registration of voters in such cities, whereby the right of the persons registered to vote is ascertained, and elections held therein at which the right thus ascertained is to be exercised, fairly relate to each other, and have a material and necessary connection with each other, and we perceive no such incongruity as counsel contend exists between the registration of voters and governing elections at which such registration lists are alone to be used by those conducting them, as renders the said act of 1883 obnoxious to the constitutional inhibition that "no bill shall contain more than one subject, which shall be clearly expressed in the title." In the case of *State ex rel. v. Mead*, 71 Mo. 266, it is expressly held that a provision in an act "concerning popular elections," authorizing the governor to fill vacancies in elective offices, is germane to the general subject and is valid.

It is also insisted by plaintiff that the said act of 1883 is a local and special law, and is, therefore, in contravention of section 53, article 4, of the constitution, which, among other things, provides that the general assembly shall not pass any local or special law regulating the affairs of cities, changing the charters thereof, providing the manner of conducting elections or fixing or changing the place of voting, creating officers, or prescribing the powers and duties of officers in cities. If the premise assumed by counsel that the law in question is a local or special law, be well founded, the conclusion contended for follows necessarily, but we think it has no foundation upon which to rest. The act in question, as we have seen, provides for the registration of

voters in cities having more than 100,000 inhabitants, and the power to pass such a law is not only directly conferred by section 5, article 8, of the constitution, but the general assembly is expressly required and commanded to pass such a law; and in exercising the power thus conferred, and the duty thus enjoined, the legislature might, as it did, incorporate in the law such provisions as to make its exercise effectual for the purpose intended to be accomplished; and as such registration could not be accomplished without the designation of some officer upon whom the duty of making it is imposed, the power of the legislature to create the office, designate the officer, prescribe his duties, and provide for his appointment or election is necessarily implied from and included in the power expressly conferred to provide for such registration. The legislature, being thus empowered, had the right to include in the act for the registration of voters any subject naturally or necessarily connected with it or flowing from it as incident thereto, and, as elections have a necessary connection with the registration of voters, the sections of the act of 1883, relating to elections as well as those relating to the creation of recorder of voters, his appointment, and the duties he is required to perform, are not obnoxious to the constitutional prohibitions invoked by plaintiff. To give these prohibitions the scope claimed for them by counsel, as applying to the act of 1883, would be to make one section of the constitution nullify and wipe out another section of the same instrument. It is a sufficient answer to all the points and authorities cited in support of the position, that the act of 1883 is a local or special law, to say that no law can be either local or special within the meaning of the constitution, which results (as does the act of 1883), directly or indirectly from a specific constitutional requirement. We cannot construe the constitution as providing methods for setting aside its own commands. *State ex rel. v. Shields*, 5 Mo. App. 259.

We are cited to the case of *State ex rel. v. Hermann*, 75 Mo. 341, as sustaining the proposition that the act of 1883 is a local law. In that case the act known as the notary public act was condemned on the express ground that by the very terms of the act it could not by any possibility apply to any other city than the city of St. Louis, and that it shut out from its operation any other city in the state which might in the future attain a population of more than 100,000; and the cases of *State v. Hammer*, 42 N. J. L. 435, and *Commonwealth v. Patton*, 88 Pa. St. 258, cited in the opinion, will show that the statutes in those cases were held to be invalid on the ground that by the terms of the statutes they could not operate in the future, but only on the existing condition of things at the time they were passed and took effect. But such is not the case with the act of 1883, for two reasons: first, because section 5, article 8, of the constitution, not only confers the power to pass such a law, but commands the exercise of the power thus conferred; and, second, because the act is not restricted or limited in its operation only to cities having a population of over 100,000 at the time it was passed, but applies to all cities in the state attaining such population in the future. That the act of 1883 was intended to apply to all cities that might in the future attain a population of more than 100,000, is evidenced by the fact that it requires the governor to appoint a recorder of voters "for each of said cities," and requires that the person so appointed should be a voter of the city for which he may be appointed. The rule as laid down by this court in the case of the *State v. Tolle*, 71 Mo. 650, is applicable to the said act of 1883. It is there held that a statute "which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class, is special, and that classification does not depend on numbers;" see, also, *State ex rel v. Walton*, 69 Mo. 558.

The next and last objection to the validity of the act,

which we shall notice, is that it is in violation of sections 21, 22, 23, 24, and 25, of article 9, of the constitution. It is argued that inasmuch as these sections authorized the voters of the city of St. Louis to frame and adopt a charter for the government of the city, which, when adopted in the manner therein provided, should take the place of and supersede the charter theretofore granted by the legislature and all amendments thereto, that as to all matters of local self-government an *imperium in imperio* was created, and as to such matters the city was emancipated from state and legislative control. These sections will satisfactorily show, if examined by themselves, and would show, were it in our province to examine them in the light of the debates, when they were the subjects of discussion in the convention which formulated the constitution, conclusively, that the chief object sought to be accomplished by them was not to emancipate the city from legislative control, but to allow it to enlarge its limits and cut it loose, when thus enlarged from the county, so as to free it from county government and exempt the property therein from taxation for county purposes. It is true that constitutional authority was given to the people of the city to frame and adopt a charter which should supersede the charter and all amendments to it in existence at the time of its adoption, but the idea that it was thereby intended to create a sovereignty, and deny to the state the right of control, is, we think, completely overthrown by the following limitations or conditions imposed by section 23, article 9 viz. : "Such charter and amendments shall always be in harmony with and subject to the constitution and laws of the state of Missouri." "Subject to," that is, placed under the authority, the dominion of the constitution and laws of the state. That it was never designed to free the city from state control is further shown by section 25, of article 9, which is as follows: "Notwithstanding the provisions of this article, the general assembly shall have the same

power over the city and county of St. Louis that it has over other cities and counties of this state.''

At the time of the adoption of the scheme and charter, there was, and is now, a law of the state in force providing for a board of police commissioners in the city of St. Louis, consisting of five persons, of whom the mayor of the city is one, and the other four appointees of the governor, and confirmed by the senate. These commissioners have control of the entire police force of the city, and are invested with large powers affecting the local government of the city. Suppose that the charter of the city when framed and adopted, in conformity with the scheme authorizing it, had contained a provision for a board of police commissioners, consisting of five persons, one of whom should be the mayor and the other four his appointees, and investing them with the same power of control over the police force of the city which the law of the state invested in those appointed by the governor, which would have prevailed, the law of the state or the charter provision? If the charter provision in that respect is to prevail the law of the state would then be subject to the charter in the face of the constitution, which declares that the charter shall be subject to the law of the state. Public corporations are the auxiliaries of the state in the important business of municipal rule and are called into being at the pleasure of the state, and the same voice which speaks them into existence can speak them out. *State ex rel. v. Miller*, 66 Mo. 328. And it was never intended by the constitutional provisions above referred to (as I have attempted to show), that the municipality of the city of St. Louis should rise higher than the fountain head. The state at large is as much interested in the method of conducting elections in said city, at which all state as well as municipal officers are elected, which method by the act of 1883 it assumes to pre-

scribe, as it is in having a well regulated police in the city, which it has assumed to provide for in the law creating a board of police commissioners, who are state as well as municipal officers, and into whose hands the important trust is confided of controlling its police force.

We do not hold that the legislature in exercising the power referred to in section 25, article 9, of the constitution, can exercise it by the passage of a local or special law ; but that it can do so by a general law we have no doubt, and when it is exercised, as we think it has been exercised in the act of 1883, by a general law, and such law is, in any of its provisions, in conflict with a charter provision that the law prevails over the charter in obedience to the mandates of the constitution that "such charter and amendments shall always be in harmony with and subject to the constitution and laws of the state."

The judgment of the St. Louis court of appeals, reversing the judgment of the circuit court, as well as the judgment rendered by said court of appeals in favor of plaintiff, is hereby reversed, the bill of plaintiff dismissed, and judgment entered in this court for the defendant. All the judges concur.