Buford, J.
 

 (Dissenting) : This case was before this Court and the opinion and judgment was filed herein on May 12th, 1930. See 128 So. R. 489. The judgment became effective upon the going down of the mandate on June 13th, 1930, no motion for hearing having been filed
 
 *1285
 
 during the period allowed by the rules of this Court for such procedure.
 

 There has now been filed in this cause a petition praying that the Court recall its mandate and reconsider its judgment as heretofore rendered.
 

 The history of the cause is recited in the original opinion. Upon considering the questions raised by the suggestion that the mandate be recalled and the judgment be reformed, I have arrived at the conclusion that the judgment, though based upon an erroneous conception of the law here applicable, would necessarily be reaffirmed on other grounds.
 

 Section 24, Article V of our Constitution is as follows:
 

 “There shall be established in the County of Escambia and upon application of a majority of the registered voters in such other counties as the legislature may deem expedient, a Criminal Court of Record, and there shall be one Judge for each of the said courts, who shall be appointed by the Governor and confirmed by the Senate, who shall hold his office for four years, and whose salary shall be one thousand dollars a year, the counties paying the salaries.”
 

 Section 30, Article V, is as follows:
 

 “The Clerk of said court shall be elected by the electors of the county in which the Court is held and shall hold office for four years, and his compensation shall be fixed by law. He shall also be Clerk of the County Court. The Sheriff of the County shall be the executive officer of said Court, and his duties and fees shall be fixed by law.”
 

 In Weinberger v. Board of Public Instruction of St. Johns County, 93 Fla. 470, 112 So. R. 253, this Court say:
 

 
 *1286
 
 "The principal is so well established that, where the constitution expressly provides the manner of doing a thing, it impliedly forbids its being done- in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done is itself a prohibition against a different manner of doing it. Holland v. State, 15 Fla. 455, text 523.
 

 See also Grantham v. Board of Public Inst., 77 Fla. 540, 82 So. R. 52. Therefore, when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the legislature to enact a statute that would defeat the purpose of the constitutional provision. State ex rel Murphy v. Barnes, 24 Fla. 29, 3 So. R. 433; State ex rel Church v. Yeates, 74 Fla. 509, 77 So. R. 262; Leonard v. Franklin, 84 Fla. 402, 93 So. R. 688. See also, Cooley’s Const. Lim. (7th Ed.) p. 114; Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. R. 703; Bryan v. Sundberg, 5 Tex. 418; District Township v. Dubuque, 7 Iowa 262.”
 

 It.appears to me, therefore, that chapter 11363, Extraordinary session of 1925, was enacted under authority of Section 24, Article V of the Constitution, above quoted, and that the provisions of Section 11 of that chapter were included therein under the provisions of Section 30 of Article V of the Constitution. The establishment by the legislature of the Criminal Court of Eecord of Escambia County was not accomplished by a special or local law as is contemplated under Sections 20 and 21 of Article III of the Constitution. Neither has the establishing of a Criminal Court of Eecord in any other County of the State been accomplished by special or local law as
 
 *1287
 
 contemplated in Sections 20 and 21 of Article III of the Constitution, but'the establishment of each of such courts has been by a general law enacted under authority of Section 24, Article V,
 
 su-pra.
 

 When such Courts are established, they each become a part of the general Judicial System of the State of Florida and perform their functions alike toward all persons and interests of the State which come within their territorial jurisdiction.
 

 Section 30 of Article V of the Constitution authorized the Legislature to provide for the election of a Clerk for the Criminal Court of Record for Escambia County and to fix his compensation by law. It further provided that when the Legislature 'established under Section 24,
 
 supra,
 
 a Criminal Court of Record in any other County it should provide for the election of a Clerk of such Court and shall provide by law for his compensation, and it" did not provide that the compensation of the Clerk of the Criminal Court of Record of Escambia County should be the same as that fixed by law for Clerks of the Criminal Courts of Record of other counties, or vice versa.
 

 If the legislative Act establishing the Criminal Court of Record of Escambia County had- provided that the compensation of the Clerk thereof should be $5,000.00 per annum, the provision must have been held to be a valid part of a general Act under authority of Section 30, Article V,
 
 supra.
 
 Then had the Legislature under authority of Section 24,
 
 supra,
 
 established a Criminal Court of Record of Hillsborough County the Legislative Act could have provided a salary of $4,000.00 per year for the Clerk thereof under authority.of Section 30,
 
 supra..
 
 Neither the provision in the Escambia County Act nor the provision in the Hillsborough County Act would be paramount to the other and each would have complied with the special pro
 
 *1288
 
 visions of the Constitution in regard to establishing Criminal Courts of Record. If such different provisions would have each been valid when found in the first two Acts establishing such courts, it follows that the Constitution contemplates that the Legislature may fix the compensation of the Clerk of the Criminal Court of Record of any County, if and when the same is established. The part of the statute or a separate statute fixing the compensation of the Clerk of the Criminal Court of Record is no more a special or local law than is the Act establishing such Court.
 

 In State v. Sullivan, 95 Fla. 191, 116 So. R. 255, this Court, speaking through Mr. Justice Strum, say:
 

 “The Legislature having the power in the manner prescribed in the Act to create the Court of Crimes and .invest it with concurrent jurisdiction with the criminal court of record in all cases of misdemeanors, the power also exists in the Legislature by necessary implication to provide for all necessary incidents without which the court could not be properly organized and without which it could not properly function. State v. Etchman, 189 Mo. 648, 88 S. W. R. 643.”
 

 In State ex rel. Donham v. Yancy, 123 Mo. 391, 27 S. W. R. 380, the Supreme Court of Missouri had under consideration a proceeding in nature of
 
 quo warranto
 
 begun in the Circuit Court of Greene County, Mo., to test the right of Yancy to hold the office of Clerk of the Criminal Court of Greene County. The Court was established by an Act of the general assembly, approved April 26, 1889. Section 12 of that Act provided that, “The Clerk of the Circuit Court of the said Greene County shall also act and be the Clerk of said Criminal Court and shall perform the same duties and receive the same compensation as is
 
 *1289
 
 or may be allowed to Clerks of the Circuit Courts for their services”. At the time of the passage of the Act and at the time of the commencement of the proceedings there under consideration, the relator was Clerk of the Circuit Court and discharging the duties and exercising the functions of the Clerk of the Criminal Court. The general assembly, by an Act approved on April 7th, 1893, created an independent office of the Clerk of Greene County Court, providing for the appointment of a Clerk thereof by the Governor, defining his qualifications, duties, and fixing the tenure of office. The Respondent had been appointed and qualified and was in custody of the office of such Clerk at the time of filing the petition. In that case the Court say:
 

 ‘ ‘ The Act in question is, in no sense, special or local, within the meaning of the Constitution, because of the fact that it creates a court at one particular location. The same could as well be said with respect to all other courts in the State, to which all persons, without regard to habitation, appeal for the redress of wrongs done them, and the adjustment of their rights. The court created by the Act in question has original jurisdiction of all crimes committed within the county of Greene, as well, also, as of any criminal cases that may be taken thereto by change of venue from any other court in the State having criminal jurisdiction, it matters not where it may be. Its judge is commissioned and paid by the State, and it matters not where or when the court may be held; it is a criminal court for the State, as much so as the Criminal Court of St. Louis, Kansas City or St. Joseph. Since the adoption of the present Constitution, the number of judges of the circuit courts composed of the County of Buchanan as one circuit, and also of Jackson as another circuit,
 
 *1290
 
 have been increased by legislative enactment, and it will not, we presume, be seriously contended that such legislation was either local or special. In State v. Hughes, 104 Mo. 459, 16 So. W. R. 489, it was held that an Act of the legislature providing for the holding of two terms of the circuit court of that circuit at Montgomery City, in Montgomery County, was not a special or local law, and did not come within the provisions of Article IY, No. 54, of the Constitution, providing that ‘no local or special law shall be passed until notice of the intention to apply therefor shall have been published in the location.’ Brace, J., in speaking for the Court, said: ‘ It is pre-eminently a State court, affecting in its operations all the cities of the State, deriving its power directly from the organic law of the State and the laws passed by the legislature in pursuance thereof, and whenever and wherever held, it is the circuit court of the State of Missouri, within and for the county in which it is held. It is not, and in no sense can be, a local court, nor can any law the legislature may pass regulating the time and place of holding its terms be a local law.’ See also State v. Field, (Mo. Sup.) 24 So. W. R. 752; State v. Orrick, 106 Mo. 111, 17 So. W. R. 176, 329; Wilcox v. State, 3 Heisk. 110; Moore v. State, 5 Sneed 510; Cordova v. State, 6 Tex. App. 207; Conner v. Mayor, etc., 5 N. Y. 285; State v. Walton, 69 Mo. 556.
 

 “Whether an Act of the legislature be a local or general law must be determined by the generality with which it affects the people as a whole, rather than by the extent of the territory over which it operates, and if it affects equally all persons who come within its range, can be neither special nor local within the meaning of the Constitution. Moreover, the general power
 
 *1291
 
 of legislature to establish criminal courts in counties having a population exceeding 50,-000 is clearly recognized by Sec. 31, Art. 6, of the Constitution, as prohibiting the establishing of criminal courts in such counties, by express terms, having a population of less than 50,000 people, is a recognition of the power to establish them in counties having a population exceeding 50,000. When there is a specific grant of power conferred by the Constitution upon the legislature upon any certain or particular subject, an Act passed in pursuance of such grant will not be held unconstitutional upon the ground that it is local or special legislation. State v. County Court of Boone Co., 50 Mo. loc. Cit. 324; State v. Watson, 71 Mo. 470. Ewing v. Hoblitzelle, 85 Mo. 64. The fact that notice was given of the intended application to the legislature for the passage of a law creating the court in question, and of a court similar in all respects in Buchanan County, did not change the law, and was in all probability done through an abundance of caution; certainly not because it was a necessary prerequisite. If, as ‘we have said, the Act of the legislature creating the criminal court of Greene County was not special or local legislation, and therefore not in contravention of the constitutional provision inhibiting such legislation, it must necessarily follow that any legislation pertaining to its administrative affairs is not local or special. The same reasons that we have given why the Act creating the court is not local nor special legislation, apply with equal force to the Act of 1893 creating the office of the clerk of said court and providing for the appointment of such clerk and the election of his sucsessor or successors.”
 

 
 *1292
 
 Section 53 of the Constitution of Missouri prohibits the passage of any local or special law,
 

 “Regulating the practice or jurisdiction of or changing the rules of evidence in any judicial proceeding or inquiry before courts, justices of the peace, sheriffs, commissioners, arbitrators or other tribunals, or providing or changing methods for the collection of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate.”
 

 Section 54, Article IY of the Constitution of the State of Missouri is as follows:
 

 “No local or special law shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the. matter or thing to be affected may be. situated, which notice shall state the substance of the contemplated' law, and shall be published at least thirty days prior to the introduction into the General Assembly of such bill, and in the manner to be provided by law. The evidence of such notice having been published shall be exhibited in the General Assembly before such Act shall be passed, and the notice shall be recited in the Act according to its tenor.”
 

 In the case of State ex rel. Carvey v. Buckner, 272 S. W. R. 940, the Supreme Court, referring to the provision of the paragraph above quoted of Section 53 of the Missouri Constitution, say:
 

 “This section has frequently been here for construction, and the unvaried holding is that legislation authorized by the Constitution cannot be regarded as local or special, although its application is. purely.
 
 *1293
 
 local. It is also held that whether an act be local or special must be determined by the generality with which it affects the people as a whole, rather than the extent of the territory over which it operates, and, if it affects equally all persons who come within its operation, it can not be local or special within the meaning of the Constitution. State ex rel Judah v. Fort, 210 Mo. 512, 109 S. W. R. 737; State v. Etchman, 189 Mo. 648, 88 S. W. R. 643; State ex rel. v. Yancy, 123 Mo. 391, 27 S. W. R. 380; State ex rel. v. Hughes, 104 Mo. 459, 16 S. W. R. 489.”
 

 The Supreme Court of Arkansas in the case of Waterman et al. v. Hawkins, 86 S. W. R. 844, having under consideration the validity of an Act of February 25th, 1905, abolishing the Watson Judicial District of Desha County and providing for the transfer of cases pending in the several courts of that district, say:
 

 “Moreover, the statute in question is not a local or special bill, within the meaning of the Constitutional requirement for publication of the intention to apply for passage. State ex rel. v. Yancy, 123 Mo. 391, 27 S. W. R. 380; State ex rel. Webster v. County Commissioners, 29 Md. 516. Mr Sutherland gives the following definition, ‘Special laws are those made for individual cases, and for less than a class requiring laws applicable to its peculiar condition and circumstances. Local laws are special as to place. When prohibited they are severally objectionable for not extending to the whole subject to which provision would be equally applicable, and thus permitting a diversity of laws relating to the same subject’. Suth. on Stat. Const. No. 127. Statutes establishing or abolishing separate courts- relate to the administration of justice,
 
 *1294
 
 and are not either local or special in their operation. Though such an act relates to a court exercising jurisdiction over limited territory, it is general in its operation and affects all citizens coming within the jurisdiction of the' court. Whether an act of the legislature be a local or a general law must be determined by the generality with which it affects the people as a whole, rather than the extent of the territory over .which it operates; and, if it affects equally all persons who come within its range, it can be neither special nor local, within the meaning of the Constitution. State ex rel. v. Yancy,
 
 supra,.
 
 In the case last cited the Supreme Court of .Missouri held that, under a provision of the constitution identical with the provision of the Constitution of this State now under consideration, neither an act of the legislature establishing a separate court, nor one detaching the clerical duties of that court and creating a separate clerk of the court, were local or special acts within the meaning of the constitution.”
 

 It could make no material difference whether the compensation of the clerk of the criminal court of record is fixed in the same legislative Act which establishes the court, or in a separate Act. Neither does it make any difference whether the compensation remains fixed as in the original Act or is increased or decreased by an amendment to the original Act accomplished by a later Act of the legislature. When a statute is amended the amendment is read into the original Act' with all the force and effect as if it had been included in the Act in the beginning, and in this case the legislative Act when accomplished by either course is authorized under the provisions of Section 24 asad Section 30 of Article Y of the Constitution.
 

 
 *1295
 
 So it is that I maintain that Chapter 11363, Acts of Extraordinary Session of the legislature of 1925, was a general Act being operative only within a limited territory, but establishing a part of the general judicial system' of the State and was valid. So also, on the same grounds, were the provisions of Chapter 11982, Acts of 1927, valid. The provision of Chapter 13611, Acts of 1929, was valid insofar as it repealed Chapter 11982. But, Section 2 of that Act, which was as follows:
 

 “Section Eleven of the Act entitled: ‘An Act to establish a Criminal Court of Record in the County of Palm Beach,’ approved December 4th, 1925, and known as Chapter 11363 of the Laws of Florida for the year 1925 be and the same is hereby re-enacted and declared to remain in the same words and figures as before the same was amended by Chapter 11982 of the Laws of Florida for the year 1927, ’ ’
 

 is in conflict with Section 16 of Article III of the Constitution, which is as follows:
 

 “Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case the act, as revised, or section as amended, shall be re-enacted and published at length.”
 

 This becomes ijmmaterial here, however, when we find that the provision with reference to the compensation of the Clerk of the Criminal Court of Record of Palm Beach County as contained in Section 11 of Chapter 11363, Acts, of Extraordinary session of 1925, is to all intents and pur
 
 *1296
 
 poses the same as Section 5971 Rev. Gen. Stats., 8238 Comp. Gen. Laws, 1927.
 

 Section 11 of Chapter 11363,
 
 supra,
 
 having been repealed by Chapter 11982,
 
 supra,
 
 and Chapter 11982,
 
 supra,
 
 having been later repealed by Chapter 13611,
 
 supra,
 
 there is no statute left in force fixing the compensation of the Clerk of the Criminal Court of Record of Palm Beach County, except Section 5971, Rev. Gen. Stats., 8238 Comp. Gen. Laws 1927.
 

 Therefore, it follows that the judgment heretofore rendered would, if recalled, be reaffirmed and such action would, therefore, be a vain and useless thing on the part of the Court.
 

 For the reasons stated, the petition for rehearing and motion to recall the mandate and reform the judgment, I think, should be denied.
 

 Ellis, J., concurs in the conclusion.