# THE STATE v. WHITAKER, Appellant.

### Division Two, February 12, 1901.

1. **Street Railways: SCREENS: MEANING GATHERED FROM TITLE: IN-DEFINITENESS.** For the purpose of arriving at the intention of the Legislature the courts look at the title as well as the body of the act, and read that and every other part of the act together. The title was, "An Act requiring persons, associations and corporations, owning or operating street cars, to provide for the well-being and protection of employees," and the sections simply said that, "Every electric street car shall be provided with screens" and "Any person, agent or officer of any corporation violating any of the provisions of this act shall be deemed guilty of a misdemeanor." *Held,* that, when the act is construed with reference to its subject and purposes, it imposes upon corporations or persons owning or operating electric cars the duty of providing them with screens, and justified the imposition of a fine upon the president of the corporation owning the cars, and is not inoperative for indefiniteness.

2. **Title of Statute.** It is only necessary that the title indicate the subject of the act in a general way without entering into details. Besides, sound policy and legislative convenience dictate a liberal construction of the title of statutes.

3. **Screen on Cars: CLASS LEGISLATION.** A statute which requires companies owning or operating electric street railways to provide their cars with screens for the protection of motormen during certain cold months, and applying to every part of the State alike, is not unconstitutional as class legislation, simply because it applies only to electric cars, and not to cable cars, etc.

4. **Fines: ONE FOURTH TO GO TO PROSECUTING ATTORNEY.** An act that grants to the prosecuting attorney one-fourth of all the fines recovered, does not invalidate the whole act, but only that clause, the Constitution clearly requiring the whole fine to be paid into the school fund.

5. **Car Screens**: DUE PROCESS OF LAW. The statute requiring electric street car companies to provide screens for their motormen, is not unconstitutional as depriving persons "of life, liberty or property without due process of law." The act was designed to protect the public health, and is a plain, just and commendable police regulation. The State has a direct interest in the health of motormen, and in the passengers whose lives and limbs may be imperiled by motormen becoming benumbed by cold.

6. ———: INFORMATION: WHO IS DEFENDANT? HOW RAISED. Where the statute says that "any person, agent or officer of any corporation violating any of the provisions of this act, shall be deemed guilty of a misdemeanor," the information should charge the officer of the company, and not the corporation itself, with the crime. And the sufficiency of the information may be raised by motion to quash, or in arrest.

Appeal from St. Louis Court of Criminal Correction—*Hon. Willis H. Clark,* Judge.

REVERSED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1) The act of March 5, 1897, is so ambiguous and defective in its terms as to convey no definite or certain meaning as to the duties and liabilities of the corporation or its agent and officers, and is therefore void. State v. Partlow, 91 N. C. 550, 49 Am. Rep. 652; Bishop on Stat. Crimes, sec. 41; Johnson v. State, 100 Ala. 32, 14 So. Rep. 629. (2) The title of the act does not clearly or at all express the subject of the act or its purposes, and therefore contravenes article 4, section 28 of the Constitution. On the contrary, the title disguises the fact that the legislation affects electric street cars only, and that punishment is to be inflicted on agents and officers of corporations, and thus defeats the beneficial purposes of the constitutional provision. State ex rel. v. Rauson, 73 Mo. 86;

State ex rel. v. County Court, 102 Mo. 537; State ex rel. v. Heege, 135 Mo. 119; Cooley's Const. Lim., 141, 150; St. Louis v. Tiefel, 42 Mo. 590; Dorsey's Appeal, 72 Pa. St. 192; In re Breene, 14 Colo. 401, 24 Pac. Rep. 3; Brooks v. People, 14 Colo. 413, 24 Pac. Rep. 553; Hannibal v. Tel. Co., 31 Mo. App. 23; Clarke, Crim. Law, p. 78, sec. 41. (3) The act is special legislation, and contravenes article 4, section 53, of the Constitution. It relates to a part only of a class of things, and must therefore be special. State v. Walsh, 136 Mo. 400; State ex rel. v. Towle, 71 Mo. 650; State ex rel. v. Hermann, 75 Mo. 340; State v. Julow, 129 Mo. 163; State v. Grannon, 132 Mo. 326; State v. Loomis, 115 Mo. 313; Dunne v. Street Railway, 131 Mo. 5; State ex rel. v. Miller, 100 Mo. 449; Murnane v. St. Louis, 123 Mo. 491; State v. Hoskins (Minn.), 59 N. W. 545. (4) The court below erred: 1. In not sustaining the motion to quash. 2. In not giving the declarations of law asked by appellant. 3. In finding the appellant guilty. 4. In not sustaining the motion for a new trial. 5. In not sustaining the motion in arrest of judgment.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) A careful examination of the act will disclose a definite and certain meaning. The act in plain terms provides that every car of a certain class shall be equipped with certain weather protectors for the safety and comfort of the motorman. It then prescribes a penalty for any officer or agent of any association or corporation violating the provisions of this act. It is not essential that the second section should make it the duty of any particular person to provide the protectors required. The first section makes the broad requirement that all such cars shall be provided with such protectors, which of

itself is sufficient to throw the duty upon the officers having charge of the affairs of the company to provide such protectors. Then as agents and officers of the company they are made criminally liable should they fail to make such provisions. A statute will not be declared void as a violation of the Constitution, unless its unconstitutionality appears beyond a reasonable doubt. Every presumption must be indulged in favor of the validity of the act, and that presumption is to continue until its invalidity is made to appear beyond a reasonable doubt. State v. Thompson, 144 Mo. 314; State v. Aloe, 152 Mo. 466; State ex rel. v. Pike Co., 144 Mo. 275; State ex rel. v. Mason, 153 Mo. 23. (2) The title of the act is sufficient to justify the enactment of everything contained in the bill. Nothing is disguised because all provisions are germane to the subject-matter expressed in the title. Anything looking towards the protection and well-being of street car employees would be germane to the title and perfectly competent as a component part of the act. Cooley on Const Lim., 174; St. Louis v. Tiefel, 42 Mo. 590; State v. Miller, 45 Mo. 497; Brandon v. State, 16 Ind. 197; People v. Molineaux, 53 Barb. 9. (3) The Legislature wisely made it applicable to electric cars for the reason that from the very nature of the various systems motormen on electric cars have heretofore been more exposed to the hardships, and more in need of protection than any others. No arbitrary subdivision of a general class has been indulged in this respect. Good and sufficient legislative reasons exist therefor, hence, defendant's authorities are not in point.

GANTT, J.—This is an appeal from a judgment of conviction by the St. Louis Court of Criminal Correction, for an alleged violation of the act of March 5, 1897, entitled "An Act requiring persons, associations and corporations, owning

or operating street cars to provide for the well-being and protection of employees."

The information was in these words:

"In the St. Louis Court of Criminal Correction.

"St. Louis, Mo., January 19, 1900.

"State of Missouri, Plaintiff,

vs.

"Edwards Whitaker and Jilson J. Coleman.

"Charged with failure to provide screen for front end of electric street car.

"Richard M. Johnson, assistant prosecuting attorney of the St. Louis Court of Criminal Correction, now here in court, on behalf of the State of Missouri, information makes as follows: That Edwards Whitaker is the president, agent and officer of the St. Louis Transit Co. And Jilson J. Coleman is the general manager, agent and officer of the St. Louis Transit Co., which said company is a corporation duly organized under and by virtue of the laws of the State of Missouri, and as such at the date hereinafter named, owned, operated and constructed a line of street railway in the said city of St. Louis and State of Missouri, operated by the motive power of electricity; that on the first day of November and upon every day in November, 1899, and upon the first day in December, 1899, and on the first day of January, 1900, and every day up to the filing of this information in said month, and on the eighteenth day of January, 1900, said corporation, through and by said Edwards Whitaker, its president, agent and officer, and Jilson J. Coleman, its general manager, agent and officer, did willfully, knowingly and unlawfully operate an electric street car, which was not a trail car, attached to a motor car upon its lines, to-wit: on the Mound City line, electric car No. 259, while said electric car was not provided at the front end with a screen composed of glass or other material, which fully and

completely protected the motorman of said electric car, or other person, stationed on the front end of said car from wind and storm while said motorman, or other person, was guiding and directing said car, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

"Richard M. Johnson,

"Assistant Prosecuting Attorney of the St. Louis Court of Criminal Correction.

"State of Missouri, ⎫
                     ⎬ ss.
"City of St. Louis, ⎭

"Richard M. Johnson being duly sworn, upon his oath, says that the facts stated in the above information are true.

"Richard M. Johnson."

The entire Act is as follows:

"An act requiring persons, associations and corporations, owning or operating street cars to provide for the well-being and protection of employees.

"Be it enacted by the General Assembly of the State of Missouri, as follows:

"Section 1. That every electric car, other than trail cars, which are attached to motor cars, shall be provided during the months of November, December, January, February and March of each year, at the front end, with a screen composed of glass or other material which shall fully and completely protect the driver, motorman, gripman or other person stationed on such front end and guiding or directing said car from wind and storm.

"Sec. 2. Any person, agent or officer of any association or corporation violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum not less than twenty-five dollars or more than

one hundred dollars for each day that any car belonging to or used by such person, association or corporation is permitted to remain unprovided with the screen required by section 1 of this act. And it is hereby made the duty of the prosecuting attorney of each county in the State to enforce the provisions of this act, for which he shall be entitled, in addition to his ordinary fee or salary, to one-fourth of the fine recovered. Approved March 5, 1897."

The defendant moved to quash on the following grounds:

"First. Because the said information does not state facts showing that the defendants or either of them are guilty of any offense against the laws of Missouri.

"Second. Because the act of the Legislature upon which the information is predicated, is unconstitutional and void, in that:

"1. The subject of the act is not clearly or at all expressed in its title, as required by section 28 of article 4 of the Constitution of Missouri.

"2. Said act is special legislation and contravenes section 53, article 4, of the Constitution of Missouri.

"3. Said act imposes excessive fines and inflicts cruel and unusual punishment, and thereby contravenes section 24 [25], article 2, of the Constitution of Missouri.

"4. Said act gives to the prosecuting attorney 'one-fourth of the fine recovered' and thereby contravenes article 11, section 8, of the Constitution of Missouri.

"5. Said act undertakes to punish the defendants for the alleged wrong and default of another, and deprives the corporation owning the car of the right to contract with its motormen for the operation of cars without screens, and deprives the motorman of the right to contract to operate such cars without screens, and also of the right to waive the presumed benefits to such motorman sought by said act, and thereby contravenes article 2, section 30, of the Constitution of Missouri.

Vol 160 mo—5

"Third.   Because the said act is in contravention of section 1, article 14, of amendments to the Constitution of the United States, in that it denies to the corporation and its employees the right to contract as to the use of cars without screens, and in that it singles out from all other classes of street cars electric cars and requires only the owners of electric cars to screen the front end thereof and thereby denies to the motorman, gripman and drivers of all other street cars the equal protection of the laws with motormen of electric cars, and also denies to the owners and operators of electric cars the equal protection of the laws, in that it imposes a burden on them not imposed upon the operators of any other class of street cars.

"Fourth.   Because said act is unreasonable and unjust in its provisions, and it was and is beyond the power, authority or jurisdiction of the General Assembly of Missouri to enact under the Constitution and laws of the State."

The court denied the motion to quash and defendants excepted.   On the twenty-second day of June, 1900, the State dismissed as to defendant Coleman, and on the same day the case was tried as to defendant Whitaker on the following statement of facts:

"(a)  That the St. Louis Transit Company was, at the time mentioned in the information, and ever since has been, and it still is, a street railway corporation of the city of St. Louis.

"(b)  That the defendant Edwards Whitaker was at the times mentioned in said information, ever since has been, and still is, president of the St. Louis Transit Company.

"(c)  That between the beginning of the month of November of the year 1899 and the end of March of the year 1900, the St. Louis Transit Company operated an electric street car, other than a trail car attached to a motor car, which

was not provided with a screen composed of gláss or other material, which fully or completely protected the motorman or other person stationed at the front end of said car, guiding or directing said car, from wind and storm.

"That said cause shall be submitted upon the facts stated in this stipulation, but nothing herein contained shall be construed as a waiver by the defendant Whitaker of the objections made to the sufficiency and legality of said information in and by the motion heretofore filed by said defendant to quash said information, nor to deprive the defendant of the right to appeal this case."

The defendant then prayed the court to give the following declarations of law:

"First. Admitting all the evidence offered by the State to be true, it is not sufficient to authorize the finding of the defendant guilty, and he must be found not guilty.

"Second. It is not sufficient for the State to show that the electric street cars named in the information and the stipulation of facts filed in the cause belonged to or were used by the St. Louis Transit Company and were by it permitted to remain without the screens or vestibules named in the first section of the act of March 5, 1897, but before the defendant can be found guilty, the State must prove beyond a reasonable doubt that such car or cars belonged to or were used by the defendant Whitaker.

"Third. The fact that the St. Louis Transit Company may have violated the statute in regard to operating cars without screens, and that the defendant was president of said company at the time of the violation of such statute, is not sufficient to prove the guilt of the defendant, and in the absence of proof showing some participation of the defendant in the operation of said cars, or knowledge of defendant that the statute was being violated, the defendant must be found not guilty."

Each of said declarations was refused by the court, and the defendant saved exceptions.

The court found defendant guilty and assessed his fine at $25.

After an unsuccessful motion for a new trial, he appealed to this court.

I.   It is urged that the Act of March 5, 1897, is so indefinite and uncertain in its meaning, that it must be inoperative for that if no other reason.   Learned counsel insist that the act does not impose the duty upon any one to provide the screens with which the act commands every electric car shall be provided during the months of November, December, January, February and March of each year, to protect the motorman, gripman or other person stationed at the front end of and guiding or directing said car, from wind and storm.

While the act is obnoxious to verbal criticism, we think it quite plainly imposes upon every electric car company or association of persons operating electric cars, the duty of providing screens on their cars in the winter months named for the protection of their motormen.   Such we take it, was the plain intent of the Legislature.   As was said by Chief Justice MOORE in 55 Texas 355, "While it is for the Legislature to make the law, it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their construction to ascertain and enforce them according to their true intent.   For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise to express its intent, and to follow which would prevent that intent."   This is a remedial as well as penal statute, and should be fairly construed, i. e., it is to be construed with reference to the subject of the act and its purposes.   So read, we think it obviously imposed upon the corporation or person owning or operating electric cars the duty of

providing cars with screens; indeed, it is not susceptible of any other reasonable construction. It not infrequently happens that one portion of a statute is construed to be remedial and another part of it, as penal.

It is somewhat more difficult to construe the second section. The language is "any person, agent or officer of any association or corporation violating any of the provisions of this act shall be deemed guilty of a misdemeanor," etc.

Having construed the first section to require the corporation, association or person owning the car to equip it with the screen required by the act, we think the statute makes it penal for "any person" who owns or operates an electric railroad car to operate such cars without the screens required by the statute and any agent or officer of any association or corporation operating or owning such cars, who violates said act is also punishable under the act, and by such agent or officer is meant one whose duty it is to see said cars are provided with said screens before they are operated; not the motorman for whose protection the act was passed. The managing executive officers represent the corporation or association and the law will presume they know whether the cars operated under their direction are provided as the statute requires and hold them responsible for operating them without first complying with the statute.

For the purpose of arriving at the intention of the General Assembly we may look to the title of the act and so doing and reading that and every part of the act together, we think the foregoing is the true construction of the act. It is not necessary in charging a misdemeanor like this to aver that it was knowingly committed. [Howell v. Stewart, 54 Mo. 400.]

II. Passing now to the next objection, that the act is unconstitutional because the title gives no indication of the character of the act itself, we think it is untenable.

Sound policy and legislative convenience dictate a liberal

construction of the title and subject-matter of statutes to main-
tain their validity; infraction of this constitutional clause must
be plain and obvious to be recognized as fatal.    This has been
the uniform rule of construction of this provision of our Con-
stitution.    It is only necessary that the title shall indicate the
subject of it in a general way without entering into details.
All auxiliary provisions properly attaching to the main subject
and constituting with it one whole may be embraced within the
enactment.    [State v. Bockstruck, 136 Mo. 335; State ex rel.
v. Bronson, 115 Mo. 271; State ex rel. v. Marion Co. Ct., 128
Mo. 427.] .

Measured by these and numerous other adjudications of
this court, the title to this act was both definite and broad
enough to include the provisions of this act, all of which were
germane to the purpose expressed.

III.    It was strenuously contended on the argument as
well as in the brief that the act is offensive to the provision of
our Constitution, which ordains that no local or special law
shall be enacted, "when a general law can be made applicable."
[Sec. 53, art. 4, Constitution.]

The insistence is that it is special legislation because it
only applies to electric cars and is enacted for the protection of
a particular class, to-wit, motormen on electric cars, whereas
by a general law the Legislature could have provided for the
protection and well-being of all street car drivers, gripman and
motorman as well as to one kind only, to-wit, motormen of elec-
tric cars, who constitute particular persons of a general class of
laborers.

As the postulate of this argument it is assumed that this
classification is purely arbitrary.    But is it so?

This act applies throughout the State, in every town and
city in which cars are propelled by electricity, and to all motor-
men who guide them.    Learned counsel in argument conceded
the soundness of the decision of the Supreme Court of Minne-

sota in State v. Hoskins and State v. Smith, 59 N. W. Reporter, 545, in which that court sustained the constitutionality of an act like this which did not apply to mule or horse street cars as being based upon a perfectly rational distinction between the duties of a driver of a horse car, and a motorman on a cable or electric car, but argued that had the act been restricted as is this act to electric cars the ruling would have been different. We do not so construe that decision.

It is true that the court assumed in that case, that the gripman could be boxed in without impairing his power of control, but the only question on that record was whether the act was class legislation because it did not include horse cars, and it was held not to be. It did not hold that it was not competent for the Legislature to make a distinction between electric cars and cable cars. The Supreme Court of Ohio, in State v. Nelson, 39 N. E. Rep. 22, met the exact question by holding that a court could not judicially know that a cable car or a horse car is so constructed and operated as to require the same means of protection for operations as is required on electric cars, and as the courts could only judge of the operations of a statute through facts of which they can take judicial notice, it refused to hold a similar statute unconstitutional.

Learned counsel urge, however, that courts "are not required to shut their eyes to matters of common knowledge or things in common use." Conceding this, is it not generally known that on a cable car the gripman stands back near the center of the car, in a box which protects the lower half of his body, and is protected by the roof of the car in rainy or snowy weather, and that this grip car is constantly used by passengers in getting on and off the train, whereas the motorman on an electric car stands in front, with his attention necessarily given to the means of controlling the motive power and the brake, and is much more exposed to the cold and inclement weather of our winters than the gripman on the cable car, and are we

to assume the Legislature did not consider this difference, or their finding that there was such a distinction was contrary to the fact beyond a reasonable doubt? We think not. It can not be questioned that in the exercise of its police power the Legislature may enact laws to protect the health and safety of our citizens by all reasonable regulations and when a given subject is within that power, the extent to which it is to be exercised is within the discretion of the Legislature. It is not insisted that it is not a wise and most humane provision for the protection of those whose avocation requires them to stand in front of a rapidly moving car on a bitter cold day, often with the mercury below zero, but merely that it does not apply to all who may suffer in similar callings.

We think the Legislature had the right to make the classification it did, and we have no power to hold it contravened the Constitution in so doing.

III. The charge that the act imposes cruel and unusual punishment is without merit. Every statute imposing a fine might by the same token be held to impose cruel and unusual punishment. The way to avoid the cruelty is to obey the law and avoid these accumulated fines.

IV. Counsel concede that the provision granting the prosecuting attorney one-fourth of the fines to be recovered, does not invalidate the whole act. Clearly that provision offends against the Constitution, which requires the whole to be paid into the school fund and so the courts would require.

V. Again it is said that the act is contrary to section 30 of article 11 of the Constitution of Missouri, which provides "that no person shall be deprived of life, liberty or property without due process of law."

Inasmuch as this is a public prosecution by the State of an offense against the public, it is difficult to discern the relevancy of the argument and decisions to the effect that this statute deprives the motormen on electric cars of their liberty

of contract. The premise upon which the argument is based is not true. It is not true that this act was not designed to protect the public health. This is not only its professed purpose, but the body of the act confirms it. It is a plain, just and commendable police regulation. The State has an interest in the health òf its citizens, and the preservation of their lives and manhood, and such is the obvious, unmistakable purpose of the act under consideration.

Not only has the State a direct interest in the health of the motormen, but in the passengers whose lives and limbs may be imperiled if the motormen are allowed to become benumbed from exposure.

As this record doęs not contain any facts upon which we could properly decide the effect of a waiver by a motorman of his right to the protection secured to him by this act, we must decline a further discussion of this point. We are clear that this act in no manner contravenes this section of our Constitution, nor the fourteenth amendment to the Federal Constitution.

VI. But notwithstanding we hold the act to be valid, the judgment must be reversed because the infòrmation does not charge' the defendant but the corporation, the St. Louis Transit Company, with knowingly and unlawfully operating its cars without having provided screens thereon as required by the act. This is a pleading in a criminal case, and it does not charge the defendant either with the ownership or the operation of the car. The sufficiency of the information was challenged in that respect by the motion to quash and in the motion in arrest of judgment.

For the insufficiency of the information to charge defendant with the offense denounced in the statute, the judgment must be and is reversed. *Sherwood, P. J.,* and *Burgess, J.,* concur.