THE STATE v. FOY WARD, Appellant.—40 S. W. (2d) 1074.

Division Two, July 3, 1931.

*Randall Wilson* for appellant.

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Harrison County, Missouri, at the general election held on November 6, 1928, adopted a proposition for a closed season on quail for two years under authority of what is now Section 8246, Revised Statutes 1929, formerly Section 5596, Revised Statutes 1919. Defendant killed a quail upon his land in Harrison County on or about November 15, 1929, and he was prosecuted by information for a misdemeanor for violation of the statute. Upon a trial before the court under an agreed statement of facts defendant was found guilty and was fined one dollar, from which judgment and sentence he appeals to this court.

Defendant, in a motion to quash the information, in a motion in the nature of a demurrer upon submission of the case, in motions for a new trial and in arrest of judgment and in assignments of error here, attacks upon two grounds the statute under which he was prosecuted and found guilty. He charges that the statute is unconstitutional, for the reason that it violates Section 28, Article IV, of the State Constitution, which provides that "no bill shall contain more than one subject which shall be clearly expressed in its title,"

and for the further reason that it violates Section 54 of Article IV which provides that "no local or special law shall be passed."

I. The Forty-fifth General Assembly passed an act, approved May 14, 1909, Laws of Missouri 1909, page 519, commonly known as the Game and Fish Law. The Act was entitled:

"AN ACT relating to the preservation, propagation and protection of game animals, birds and fish creating the office of game and fish commissioner; creating a game protection fund, and appropriating money therefrom, (with an emergency clause.)"

Section 15 of the act became Section 6522, Revised Statutes 1909.

The Fiftieth General Assembly, by an act approved May 13, 1919, Laws of Missouri 1919, page 341, repealed and reenacted certain sections of the game and fish law. Among these sections was Section 6522, Revised Statutes 1909. The title of this act of 1919 is as follows:

"AN ACT to repeal sections 6516, 6522, 6524, 6548, 6557, 6558, 6566, 6574, 6575, 6576, 6577, 6578, 6579, 6580, 6581, 6582, 6583, 6585, 6591b, 6521a, 6568, 6568a, of article 2, of chapter 49, of the Revised Statutes of Missouri, for 1909, as amended by the acts of the general assembly for the years, 1911, 1913, 1915, and 1917, and to enact in lieu thereof thirty-one new sections, to be known as sections 6516, 6521a, 6522, 6524, 6548, 6548a, 6548b, 6548c, 6548d, 6557, 6558a, 6566, 6574, 6575, 6576, 6576a, 6577, 6578, 6578a, 6579, 6580, 6581, 6582, 6583, 6585, 6591b, 6568, 6568a, 6568b, 6568c, 6568d, providing for the protection of fish and game, the issuance of hunting and fishing license, creating certain offenses, and providing penalties for the violation thereof."

Section 6522, Revised Statutes 1909, as reenacted in 1919, contained the local option proviso which defendant now attacks upon constitutional grounds. This section became Section 5596, Revised Statutes 1919, and is as follows:

"The right given by this article to take or kill deer, game or birds, or to have in possession, unless otherwise specified is limited to food purposes, and to one deer, one turkey, ten quail or bobwhite, and fifteen additional game birds of each and every other family for each person in any one calendar day, and no person shall take, kill or have in his possession at any one time more than one deer, two turkeys, fifteen quail or bobwhite, and twenty-five additional legal game birds of each and every other family; and no person shall kill during any calendar year more than four turkeys nor more than one deer. No birds, game or fish protected by this article shall be held in possession by any person for more than five days after the close of the season for killing the same: *Provided*, that upon the filing of a petition signed by one hundred or more householders of any county and presented to the county court at any regular or

special term thereof more than thirty days before any general election to be had and held in said county, it shall be the duty of the county court to order the question as to whether or not there should be a closed season upon quail for the next two years in their said county submitted to the qualified voters, to be voted on by them at the next election. Upon the receiving of such petition it shall be the duty of the county court to make the order as herein recited, and the county clerk shall see that there is printed upon all the ballots to be voted at the next election the following:

For a closed season upon quail.............................Yes
                                                          No

Erase the word you do not wish to vote.

"The returns of said election upon said subject shall be opened, canvassed and certified, as the returns for general elections. If the majority of the votes cast upon such subject be in favor of the closed season upon quail, then it shall be unlawful to take, capture, or kill any quail or bobwhite within such county for the period of two years thereafter following the announcement of the result of said election, and the county court shall spread the result of such election upon its records and give notice thereof by publication in some newspaper printed and published in such county, and such law shall become operative and effective from the time such publication is made. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor."

The Fifty-fifth General Assembly passed an act, approved June 5, 1929 (Laws of Missouri, 1929, page 217), repealing Section 5596, Revised Statutes 1919, and enacting a new section pertaining to the same subject to be known as Section 5596. The section as reenacted in 1929 omits mention of deer, contained in the old section. It decreases the number of turkeys which anyone may kill or have in his possession at any one time from two to one, and it decreases the number of turkeys which anyone may kill in any calendar year from four to one. It contains a new proviso that it shall be unlawful to kill turkey at any time within the confines of any state park. Section 5596 as reenacted in 1929 is in all other respects, including the local option proviso, the same as the repealed section. The 1929 act is now Section 8246, Revised Statutes 1929.

Laws passed by the Fifty-fifth General Assembly and not vetoed by the Governor went into effect August 27, 1929. Defendant killed the quail for which he was prosecuted on or about November 15, 1929. Defendant contends here for the first time that the repeal by the Fifty-fifth General Assembly in 1929, of Section 5596, Revised Statutes 1919, operated to terminate the two-year closed season on quail, adopted by Harrison County in 1928, notwithstanding that the repealing act of 1929 reenacted Section 5596, including the local option proviso.

664

It is a fixed rule, scarcely needing restatement, that no legislative enactment should be declared unconstitutional unless it appears very clearly so, and every reasonable intendment should be made to sustain it. This court has uniformly given a broad and liberal construction to Section 28, Article IV, of the Constitution, which commands that no bill shall contain more than one subject which shall be clearly expressed in its title. [State ex rel. Kansas City Park District v. County Court of Jackson County, 102 Mo. 531; State ex rel. Niedermeyer v. Hackmann, 292 Mo. 27, 237 S. W. 742.]

Defendant attacks the title of the act of the Fiftieth General Assembly, approved May 13, 1919, Laws of Missouri 1919, page 341 et seq. The title of that act has been set out in full. It discloses the purpose of the act to be to repeal twenty-two specified sections of Article II of Chapter 49 of the Revised Statutes of Missouri and to enact in lieu thereof thirty-one new sections bearing specified numbers, providing for the protection of fish and game, the issuance of hunting and fishing licenses, creating certain offenses, and providing penalties for the violation thereof. As has been seen, re-enacted Section 6522 has a proviso for county local option on closed season for quail, which was not in repealed Section 6522. The general purpose of the act of 1929 was the protection of fish and game, and the general purpose of the original act (Missouri Laws 1909, p. 519) was the preservation, propagation and protection of game animals, birds and fish.

While no definite rule to test the sufficiency of titles may be stated and each case must be judged by the special facts which it presents, we may take for our guide the views of the court, expressed in 1890 concerning Section 28, Article IV of the organic law, in State ex rel. Attorney-General v. Miller, 100 Mo. 439. l. c. 444, 445:

"This section in the Constitution of 1875 and one of a like import in the Constitution of 1865 have been the subject of frequent consideration in this court. Its demands are that matters which are incongruous, disconnected and without any natural relation to each other must not be joined in one bill; and the title must be a fair index of the subject-matter of the bill. A very strict and literal interpretation would lead to many separate acts relating to the same general subject, and thus produce an evil quite as great as the mischief intended to be remedied; hence a liberal interpretation and application must be allowed. In Ewing v. Hoblitzelle, 85 Mo. 64, the following rule taken from Sedgwick was approved: 'Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed

in the title the statute is valid.' Substantially the same rule had been laid down in several previous cases."

Defendant contends "that the part of the Section 5596, Revised Statutes 1919, providing for an election in counties of the State to determine whether quail can be killed under any circumstances is not fairly indicated by the title." Further that "this law authorizing counties in the State to adopt, by vote, a closed season for quail is not expressed in the title."

The requirement of the Constitution, Section 28, Article IV, that a statute shall contain but a single subject which shall be expressed in its title, was designed to attain unity of object in the ultimate aim of the statute, not in the details looking to that end, and the title need not refer literally to all the details suggested by the general subject. [State ex inf. Attorney-General v. Hedrick, 294 Mo. 21, 241 S. W. 402; 36 Cyc. 1017; State ex rel. v. Slover, 134 Mo. 10, 31 S. W. 1102; State ex rel. Attorney-General v. Ranson, 73 Mo. 78; St. Louis v. United Railways Co., 263 Mo. 387, 174 S. W. 78; State v. Whitaker, 160 Mo. 59, 60 S. W. 1068; St. Louis v. Weitzel, 130 Mo. 600, 31 S. W. 1045; St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611; Coffey v. Carthage, 200 Mo. 616, 98 S. W. 562; State ex rel. v. Mead, 71 Mo. 266; Ewing v. Hoblitzelle, 85 Mo. 70; State ex rel. Wiles v. Williams, 232 Mo. 56, 133 S. W. 1; Booth v. Scott, 276 Mo. 1, 205 S. W. 633; Asel v. Jefferson City, 287 Mo. 195, 229 S. W. 1046.] And from these same authorities we find the rule to be that if a proviso of an act of the General Assembly fairly relates to the general subject and purpose of the act, if it has a natural connection with this purpose, and is an incident or means of accomplishing the purpose, and if the purpose is sufficiently expressed in the title, the act including the proviso is valid under the Constitution, Section 28, Article IV.

The general purpose of the Act of 1909 and of the Act of 1919 for the preservation, propagation and protection of game animals, birds and fish is sufficiently expressed in the titles of those acts. Therefore the proviso for county local option for a closed season on quail, first found in the Act of 1919, does not violate the Constitution, Section 28, Article IV. This for the reason that the proviso has a natural connection with the subject and purpose of the act of which it is a part, and it is an incident or means of accomplishing that purpose.

The lore of Nymrod, the hunter, is not needed for one to know that the life of beasts and birds of a wild nature, *ferae naturae,* game, in short, is in greater peril in some places than in others. In some counties quail may be in abundance under favorable conditions of feed, weather and cover. Here a moderate amount of shooting in the open season fixed by statute (Sec. 8232, R. S. 1929), from November 10 to December 31 each year will not seriously affect the pres-

ervation, propagation and protection of bobwhite. In other counties, adverse natural conditions need only the aid of many shotguns in the open season to complete the work of destruction and migration. In these counties, the citizens by invoking the local option proviso of the game laws, will carry out the general state-wide purpose of preservation and protection of quail.

In recognition of this need for variable measures of protection of game, the power of the State to protect and regulate is in some states delegated, at least partially, by the Constitution or by statute, to local governmental bodies. [27 C. J. 945.] The organic law of California (Const. Calif. Art. IV, Sec. 25½) authorizes the Legislature to provide for the division of the State into fish and game districts and to enact appropriate laws for the protection of fish and game therein. [Ex parte Prindle, 94 Pac. 871.]

In the State of Washington a section of the game code authorizes county game commissioners to set aside limited game preserves wherein game shall not be taken within such time as the commissioners may fix. In an action involving the exercise of this power by county game commissioners it was contended that the section was not germane to the purpose of the act as expressed in its title. The Supreme Court of Washington ruled that the title of the act indicated its broad scope as a complete code regulating the protection and taking of game birds and fish and was sufficient to embrace as germane thereto the section giving to county game commissioners the powers stated. [Cawsey v. Brickey, 82 Wash. 653, 144 Pac. 938.]

The case of State v. Weber, 205 Mo. 36, 102 S. W. 955, 10 L. R. A. (N. S.) 1115, 120 Am. St. 715, raised the question whether a section of the game law of 1905 (Laws 1905, p. 161, sec. 13) violated the Constitution, Article IV, Section 28. The ruling of the court in that case should be conclusive of the like question here.

Defendant also contends that the General Assembly by declaring that the ownership of and title to all birds, fish and game, whether resident, migratory or imported, is in the State (Sec. 8224, R. S. 1929) thereby expressed its intention "that a few voters in a county within the State should not have any right, title or control over such animals." At a very remote time the right and power of the sovereign authority to regulate and control the taking of wild animals were asserted and recognized. Originally, the title seems to have been regarded as vested in the sovereign as a personal prerogative; but, on the granting of Magna Charta and the Charter of the Forest by Henry III in 1225, the rights of the sovereign in unreclaimed wild animals were limited, and the rule of the Roman Law restricting the sovereign power to controlling and regulating the taking of such animals became the common law of England. The rule of the Civil Law recognizing the qualified title of the sovereign in wild animals, having been adopted in England, became the com-

mon law of the United States, and here the rule is that the general ownership of wild animals, as far as they are capable of ownership, is in the State, not as a proprietor, but in its collective sovereign capacity as the representative and for the benefit of all its citizens in common. [3 C. J. 18.] The preservation and protection of game which reasonably may result from the adoption by certain counties of local option for a closed season on quail is for the benefit of all of the citizens of Missouri. The first objection of defendant to the county local option proviso as to quail is not well taken.

II. The further objection that the local option proviso for a closed season upon quail is a local or special law and therefore that it is a violation of the Constitution, Article IV, Section 54, is without merit. The same question was passed on by the court in the case of State ex rel. Maggard v. Pond, 93 Mo. 606, 6 S. W. 469, decided in 1887. This case involved the validity of the local option liquor law. [Mo. Laws 1887, p. 179.] In an election held in Trenton, a town having more than 2500 inhabitants in the County of Grundy, a majority of the votes were cast against the sale of intoxicating liquors. Thereupon the relator applied to the County Court of Grundy County for a license to keep a dramshop in Trenton. The county court refused to grant the license, but the circuit court granted its writ of mandamus to compel the county court to so do. Upon appeal this court reversed the action of the circuit court. The court in its opinion said (6 S. W. l. c. 471):

"We are not left at sea for a rule by which to determine what is a general, and what is a special or local, law. The distinction between them has been very closely drawn by this court in the following cases: In the case of State v. Tolle, 71 Mo. 645, it is held 'that a statute which relates to persons or things *as a class* is a general law. while a statute which relates to particular persons or things *of a class* is special.' In case of Humes v. Railway Co., 82 Mo. 231, it is said to be a settled rule of construction that a legislative act which applies to and embraces all persons who are or may come into like situations and circumstances is not partial.' Phillips v. Railway Co., 86 Mo. 540, is to the same effect. *Vide,* also, Ewing v. Hoblitzelle, 85 Mo. 64. Citations from the highest courts of other states to the same effect might be added, but reference to them is not deemed to be necessary, simply to fortify a rule adopted by this court so consonant with reason and common sense. Under the rule thus laid down,. the contention of the relator that the act in question is a local or special and not a general, law, is without foundation. The act in question applies to all the counties in the State *as a class,* and to all incorporated cities or towns, *as a class,* having a population of 2500 or more inhabitants. All the counties of the State, and all cities and

towns with the requisite population, may, by complying with its terms, come under its provisions. This direct question was passed upon by four of the judges of this court in *Opinion of Judges,* 55 Mo. 297, and a similar law relating to township organization was declared to be a general law; and the reason given for the conclusion was 'that every county in the State might avail itself of the privileges offered by the law by a majority vote of its people.' The fact that one or more counties, or one or more cities or towns, may by a majority vote put the law in operation in said county or counties, cities and towns, and other counties, cities, and towns, may not do so, does not affect the rule, nor furnish a test by which to decide whether the law is local or general, and this court has never held otherwise.''

The foregoing decision withstood many attacks, mention of which may be found in Ex parte Handler, 176 Mo. 383, 75 S. W. 920.

The principle of local option finds expression in several current general laws of the State of Missouri. Qualified voters in any territory in this State which is not organized desiring a common school district, and which territory has within its limits a score or more of pupils of school age, may meet and by vote organize a school district. [Section 9273, R. S. 1929.]

Local option may be exercised by any county on a proposition to be submitted at any general election to determine whether or not there should be adopted in that county the general state law creating a license tax on dogs.

The citizens of any county may, at a general or special election called upon petition of one hundred householders, decide the question whether the provisions of Article VI, Chapter 88, Revised Statutes 1929, relating to the restraint of animals from running at large, shall be enforced in that county. And the citizens in their petition to the county court to call such election shall state against what species of all the domestic animals named in Article VI they may desire the provisions of the article to be enforced. [Sec. 12805, R. S. 1929.] And Section 12810 gives to any three or more townships in one body in a county the same local special privileges respecting the enforcement or non-enforcement of the stock law.

III. The point that the repeal by the Fifty-fifth General Assembly in 1929 of Section 5596, Revised Statutes 1919, and the enactment in lieu thereof of a new section to be known as Section 5596, terminated the two-year closed season voted by Harrison County in 1928, is without merit. In Brown v. Marshall, 241 Mo. 707, 145 S. W. 810 l. c. 815, this court ruled:

''A subsequent act of the Legislature repealing and reenacting, at the same time, a pre-existing statute, is but a continuation of the

latter, and the law dates from the passage of the first statute and not the latter. [State ex rel. v. Mason, 153 Mo. 23, l. c. 58-59; State ex rel. v. County Court, 53 Mo. 128, l. c. 129-130; Smith v. People, 47 N. Y. 330.]''

And this is true even though the new Section 5596 of 1929, contained modifications of the repealed sections. [State v. Bradford, 314 Mo. 684, 285 S. W. 496.]

Finding no prejudicial error, the judgment and sentence of the circuit court is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.