**Kenneth A. COHEN et al., Respondents,**

v.

**John H. POELKER et al., Appellants.**

No. 58855.

Supreme Court of Missouri,
En Banc.

March 10, 1975.

Frank Susman, Burton W. Newman, Susman, Schermer, Willer & Rimmel, St. Louis, for respondents.

John C. Danforth, Atty. Gen., Andrew Rothschild, Asst. Atty. Gen., Jefferson City, for intervenor-respondent.

Jack L. Koehr, City Counselor, Edward M. Peek, Associate City Counselor, St. Louis, for appellants.

Evans, Hoemeke & Casey, Robert B. Hoemeke, St. Louis, for amicus curiae.

HENLEY, Judge.

This is an appeal by defendants from a decree enjoining them, as members of the Board of Estimate and Apportionment of the city of St. Louis (Board), from preventing plaintiffs and other members of the public from attending meetings of the Board in violation of Chapter 610, RSMo Supp. 1973, V.A.M.S.,[1] known generally as the "Sunshine Law." We affirm.

The court acknowledges the excellent assistance furnished it in the decision of this case by the briefs of the parties, the intervenor, and The Pulitzer Publishing Company, amicus curiae.

The suit was commenced by plaintiffs filing their petition alleging, in substance, that during the morning of April 19, 1974, the Board, a public governmental body,

met in the offices of the Mayor at City Hall in the city of St. Louis and held an official meeting, a public meeting within the meaning of Chapter 610; that they (plaintiffs) attempted to attend said meeting, but the Board, through its members, agents and others, wilfully and deliberately, prevented their attendance; that the Board has stated through one of its members that it will continue to prevent, exclude and preclude the attendance of plaintiffs and other members of the public at such meetings in the future, and plaintiffs have reason to believe, and do believe, the Board will do as stated unless injunctive relief is granted them as authorized by § 610.030.

By their answer, the Board and its members admit plaintiffs were denied admission to the meeting and assert, in defense, that the provisions of Chapter 610 upon which plaintiffs base their claim for relief are unconstitutional because in violation of Mo.Const. Art. III, § 23 and Art. VI, § 22, V.A.M.S.

Upon his application, the attorney general of Missouri was granted leave to and did intervene as a party plaintiff and filed a reply denying the allegations of the Board's answer attacking the constitutionality of Chapter 610.

In addition to its challenge to the constitutionality of this Law, the Board also contends that it is not a "public governmental body" within the meaning of § 610.-010(2), and for that reason the requirement of § 610.015 that " * * * all public meetings shall be open to the public * * * " is not applicable to it.

"Public governmental body," is defined in § 610.010(2) as " * * * any constitutional or statutory governmental entity, including any state body, agency, board, bureau, commission, committee, department, division, or any political subdivision of the

1. Conference Committee Substitute for Senate Bill No. 1, enacted at the first regular session of the Seventy-seventh General Assembly and approved August 9, 1973.

References to Chapter 610 and sections thereof will be to the 1973 supplement to RSMo, V.A.M.S.

state, of any county or of any municipal government, school district or special purpose district, and any other governmental deliberative body under the direction of three or more elected or appointed members having rule-making or quasi-judicial power."

The Board argues that in order to be a "public governmental body" it must be a governmental entity of constitutional or statutory origin; and that while it may be a governmental entity it is not of constitutional or statutory origin. On the contrary, the Board says, it is a creature of the city of St. Louis and its origin is the city charter. From this the Board concludes that the legislature did not intend to include "local" bodies such as the Board of Estimate and Apportionment; that had the legislature so intended it could and would have clearly stated that intent.

The court stated in In re Tompkins' Estate, Mo., 341 S.W.2d 866, 872:

" 'When called upon to construe a statute, the court's prime duty is to give effect to the legislative intent as expressed in the statute. To this end we are guided by certain well established and recognized rules, among which are the following: (a) The object sought to be obtained and the evil sought to be remedied by the Legislature; (b) the legislative purpose should be assumed to be a reasonable one; (c) laws are presumed to have been passed with a view to the welfare of the community; (d) it was intended to pass an effective law, not an ineffective or insufficient one; (e) it was intended to make some change in the *existing* law.' State ex rel. M. J. Gorzik Corp. v. Mosman, Mo.App., 305 S.W.2d 733, 734; State ex rel. M. J. Gorzik Corp. v. Mosman, Mo.Sup., 315 S.W.2d 209, 211."

■ The several sections of Chapter 610, considered together, speak loudly and clearly for the General Assembly that its intent in enacting the Sunshine Law, so-called was that all meetings of members of public governmental bodies (except those described in § 610.025) at which the peoples' business is considered must be open to the people and not conducted in secrecy, and also that the records of the body and the votes of its members must be open.

■ The definition of "public governmental body" refers to and includes constitutional and statutory governmental bodies or entities at all levels in the state; for example: the "state" itself, "any political subdivision of the state," the "county," the "municipal government," the "school district," the "special purpose district," etc. By including in the definition any "agency," "board," "bureau," "commission," "committee," "department" and "division," the General Assembly was recognizing some of today's forms of entities through which the several levels of governmental bodies function. It is these agencies, commissions and departments and their members which have "meetings"; not the state, county, municipality or district. Thus, it is clear that the intent was that secrecy be prohibited at all levels of government in the state by requiring that the meetings and votes of the members of these departments, commissions and agencies of the several levels of government and the records thereof be "open" to the public.

■ While the Board is not, as it contends, of constitutional or statutory origin, it is a "board" created by the charter of the city which is a municipal government of constitutional origin. The Board is charged by the city's charter (Article XVI) with functions which are essential to the operation of the city. For example, it collects from every department, board and office of the city information with which to prepare and submit annually to the Board of Aldermen a budget for the next fiscal year of the city. From this information it also prepares and submits to this legislative body a bill establishing the tax rate for the city. It is obvious from this description that any official action taken by the Board, through its members and their votes, constitutes a vital part of the

government of the city affecting all its people. Hence, its action is of the type which the General Assembly has said by Chapter 610 shall not be taken in secrecy, but shall be open to the public. To hold otherwise would result in these statutes being meaningless and ineffective insofar as a constitutional charter city is concerned.

■■ Article III, § 23, constitution of Missouri, provides in part that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title * * *." The title of the bill by which Chapter 610 was enacted is: "An Act relating to meetings, records, and votes of public governmental bodies, with a penalty provision."

The Board contends and argues that the senate bill by which this chapter was enacted contains two subjects: (1) meetings, records and votes of public governmental bodies; and (2) the closing and expungement of arrest records; that any relationship between the two is tenuous at best and not "natural or logical."

It has been held uniformly by the courts of this state that Article III, § 23, should be liberally construed and applied and legislative enactments not be declared unconstitutional unless it appears very clearly so, and every reasonable intendment should be made to sustain it. State v. Smith, 233 Mo. 242, 135 S.W. 465, 467 (1911); State on inf. of Dalton v. Land Clearance for Redevelopment Authority of Kansas City, 364 Mo. 974, 270 S.W.2d 44, 54[6] (1954); State v. Ward, 328 Mo. 658, 40 S.W.2d 1074, 1076[12] (1931); Edwards v. Business Men's Assurance Co. of America, 350 Mo. 666, 168 S.W.2d 82, 93 (1942).

In the *Edwards* case, supra, at 93, the court said: "The constitutional provision simply requires that the title shall give information of the general subject of the act. While it may be so general in its terms as to omit matters germane to the principal features of the statute, if it sufficiently indicates the substantial purpose of the law, it will not be violative of the Constitution."

We do not agree that the bill by which Chapter 610 was enacted contained two subjects. It contained one general subject expressed clearly in its title in very broad language: " * * * meetings, records, and votes of public governmental bodies * * *." The Board's argument is that §§ 610.100 through 610.115, applicable to arrest records and their closing and expungement, constitute a second, separate subject incongruous and not germane to the subject expressed in the title. Arrest records are certainly "records" of both the executive and judicial departments and state government, and whether they shall be "open" to the public and when the fact of arrest may be expunged from those records and "closed" to the public are clearly related to and compatible with the other sections of this chapter and the title of the Act.

■ The Board's final point is that Chapter 610 (particularly §§ 610.015 and 610.020 thereof) violates the provisions of Mo.Const. Art. VI, § 22, when applied to the city of St. Louis, a constitutional charter city, and is, therefore, unconstitutional.

Article VI, § 22, is as follows:

"No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution, and all such offices or employments heretofore created shall cease at the end of the terms of any present incumbents."

The Board asserts that the purpose of § 22 of Article VI is to prohibit interference by the General Assembly with offices of a constitutional charter city having solely "municipal" functions, and thereby assure such city a necessary broad measure of freedom in the management and control of purely local affairs. Recognizing that a constitutional charter city is not free from

all state regulation, the Board argues that Chapter 610 goes beyond permissible regulation in that it creates duties not required of the Board and its members by the city charter and impermissibly limits the Board's authority to control the conduct of its meetings.

Chapter 610 represents a legislative determination and declaration of the public policy of the state relating to meetings, records, and votes of *all* public governmental bodies; that policy being, in general, that such meetings, records and votes be open and available to the people these bodies serve. This policy, of general interest and import, is applicable state-wide at all levels of government in the state, including a constitutional charter city and this Board of the city of St. Louis. City of Joplin v. Industrial Commission of Missouri, 329 S.W.2d 687, 693[7] (Mo. banc 1959); City of St. Louis v. Missouri Commission on Human Rights, 517 S.W.2d 65 (Mo.1974). Chapter 610 does not violate the provisions of Mo.Const. Art. VI, § 22.

The judgment is affirmed.

All concur.